[No. A042643. First Dist., Div. Four. Oct. 13, 1988.]

NORA MEDO et al., Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
RAYMARK INDUSTRIES, INC., et al., Real Parties in Interest.

66

COUNSEL

Harry F. Wartnick, Stephen M. Tigerman, Cartwright, Slobodin, Bokelman, Borowsky, Wartnick, Moore & Harris, Daniel U. Smith and Edward S. Willner for Petitioners.

No appearance for Respondent.

Thomas A. Trapani and Self, Dang & Wah for Real Parties in Interest.

**OPINION**

**ANDERSON, P. J.—** This petition raises the question of whether the issue of punitive damages may be tried to a jury which has not determined the liability of the defendant. We conclude that a bifurcation which results in separate juries is prohibited by Civil Code section 3295, subdivision (d). (All further statutory references are to the Civil Code unless otherwise indicated.) We also conclude, however, that real party waived the application of this section and that, therefore, the trial court erred in requiring a retrial of the liability issue. We issue our writ of mandate to require respondent court to vacate its order requiring a retrial of liability and compensatory damages.

Petitioners are the plaintiffs in an action against real party arising from the death of Vincent Medo allegedly as the result of exposure to asbestos. The case came on for trial on January 5, 1988. On that date the court announced that there had been no motion to bifurcate but that, for the convenience of jury selection and trial scheduling, it had concluded that the issue of punitive damages should be bifurcated and tried to a separate jury. The discussion between lawyers and judge concluded with the statement of the court that punitive damages would be left out of the voir dire and opening statements and the jury would be advised that the trial would take four to five weeks.

On February 4, 1988, the jury returned a verdict in favor of petitioners in the amount of $163,000 and was discharged.

On March 16, 1988, defendant Raymark Industries, Inc., real party in interest herein, filed a "Memorandum re Claim for Punitive Damages" in which it asserted that section 3295, subdivision (d), of the Civil Code requires that the same jury that finds a defendant liable for compensatory damages must determine whether the defendant is liable for punitive dam-

ages. On April 19, 1988, real party moved to dismiss or, alternatively, for a mistrial on the ground that, the jury having been discharged, there was no way to comply with section 3295.

The motions to dismiss and for mistrial were heard on April 19, 1988. Petitioners argued that real party had waived any right under section 3295 by failing to object to separate juries for the two phases of the bifurcated trial and failing to object to the discharge of the jurors. At the conclusion of the hearing, the court announced that "the motions are denied."

On April 22, 1988, without any further motions, the court ordered that at the second phase of the trial, the jury was to reach a verdict on liability before plaintiffs would be permitted to present evidence on the issue of punitive damages. "In other words, plaintiff must retry the liability issues to the second phase jury which were previously tried to the first jury before presenting evidence of punitive conduct. Absent such proof, the Court will entertain and grant a Motion for a New Trial." The court stayed the trial to await a final order from the Court of Appeal or the Supreme Court. The court explained orally that it had "invited this order so that the trial courts of this jurisdiction and throughout the State will have some guidance about how this particular new section ought to be interpreted in dealing with trials which include punitive damages."[1]

■ Section 3295 was enacted in 1979 to protect defendants from the premature disclosure of their financial condition when punitive damages are sought. (See *Cobb* v. *Superior Court* (1979) 99 Cal.App.3d 543, 550 [160 Cal.Rptr. 561].)[2] In 1987, the section was amended to add subdivision (d) which provides: (d) "The court shall, on application of any defendant, preclude the admission of evidence of that defendant's profits or financial condition until after the trier of fact returns a verdict for plaintiff awarding actual damages and finds that a defendant is guilty of malice, oppression, or fraud in accordance with Section 3294. Evidence of profit and financial condition shall be admissible only as to the defendant or defendants found

---

[1] Real party contends it was prejudiced by petitioners' delay of two months in filing this petition because during that period real party prepared for a retrial of the issue of liability. Real party urges this court to deny the petition as untimely under the doctrine of laches. (See *People* v. *Superior Court* (*Clements*) (1988) 200 Cal.App.3d 491, 496 [246 Cal.Rptr. 122].) The fact that the trial court stayed the retrial to allow appellate review of its decision obviously should have led real party to anticipate the filing of the petition and the possibility of relief from the trial court's ruling.

[2] Section 3295, subdivision (a) provides: "The court may, for good cause, grant any defendant a protective order requiring the plaintiff to produce evidence of a prima facie case of liability for damages pursuant to Section 3294, prior to the introduction of evidence of: (1) The profits the defendant has gained by virtue of the wrongful course of conduct of the nature and type shown by the evidence. (2) The financial condition of the defendant."

to be liable to the plaintiff and to be guilty of malice, oppression, or fraud. *Evidence of profit and financial condition shall be presented to the same trier of fact that found for the plaintiff and found one or more defendants guilty of malice, oppression, or fraud.*" (Stats. 1987, ch. 1498, § 6, italics added.)

At the same time, section 3294 was amended to require that punitive damages be established by "clear and convincing" evidence rather than a preponderance of the evidence. (Stats. 1987, ch. 1498, § 5.)

Petitioners contend that to interpret subdivision (d) of section 3295 to require that the same jury determine compensatory and punitive damages in all circumstances does not further the purpose of section 3295 which is solely to protect a defendant from unwarranted discovery. That may have been the sole purpose before the addition of subdivision (d), but the addition of the subdivision reveals that the purpose of the Legislature was broadened to cover the question of whether separate juries would be permissible in an action for punitive damages.

Petitioners contend that the section must be interpreted to require only that the jury that hears evidence of a defendant's malice be permitted to hear evidence of that defendant's financial condition. As real party points out, however, "[i]f the Legislature had intended to allow different juries to make the liability and punitive damage decisions, then the last sentence of Section 3295(d) would have read as follows: 'Evidence of profit and financial condition shall be presented to the same trier of fact that found one or more defendants guilty of malice, oppression or fraud.' But the Legislature included the phrase 'found for the plaintiff and.' This additional phrase shows that profit and financial condition evidence must be presented to the same trier of fact which had already made the two preliminary findings of liability and malice, oppression or fraud."

Real party is also convincing in suggesting the reason for requiring the same jury to determine both liability and punitive damages. ■ Punitive damages are not simply recoverable in the abstract. They must be tied to oppression, fraud or malice *in the conduct which gave rise to liability in the case.* Thus BAJI No. 14.71, the instruction on punitive damages, tells the jury that in arriving at an award of punitive damages, it is to consider the reprehensibility of the conduct of the defendant and that the punitive damages must bear a reasonable relation to the actual damages. In order for a jury to evaluate the oppression, fraud or malice in the conduct giving rise to liability in the case, it must consider the conduct giving rise to liability.

■ Petitioners claim that even if subdivision (d) of section 3295 requires that compensatory and punitive damages be determined by the same

jury, real party waived such a requirement by its failure to object to the procedure.

At a pretrial hearing on January 5, 1988, the court, after detailing the problem with keeping a jury throughout the course of the trial, stated: "So unless there is strong objection from counsel, the court will order that punitive damages be bifurcated and be tried before a separate jury." Peter Fisher and Linda Blackwell both were present representing defendant and neither objected to the separate juries. Rather, Mr. Fisher went directly to the discussion of whether a statute of limitations issue should also be separately heard. The court did not resolve this problem but concluded: "In any event, the punitive damages phase will be dealt with by a separate panel regardless of how we deal with the statutory problem." Counsel for plaintiff agreed and Mr. Fisher stated: "Well, your Honor, I don't see that big a problem in this case. . . ." Petitioners also point out that real party was silent at the discharge of the first jury, thus setting the stage for its motions to dismiss and for a mistrial.

In response to this contention of waiver, real party claims that it did object and that, furthermore, everyone, judges and parties alike, knows that Raymark always opposes any bifurcation of asbestos cases except for the issue of statute of limitations. It attaches affidavits to support this claim. In addition, real party contends that the bifurcation order is deemed excepted to under Code of Civil Procedure section 647 which provides in relevant part: "All of the following are deemed excepted to: the verdict of the jury; the final decision in an action or proceeding; an interlocutory order or decision, finally determining the rights of the parties, or some of them; an order or decision from which an appeal may be taken; an order sustaining or overruling a demurrer, allowing or refusing to allow an amendment to a pleading, striking out or refusing to strike out a pleading or a portion thereof, or refusing a continuance; an order made upon ex parte application, giving an instruction, refusing to give an instruction, or modifying an instruction requested; an order or decision made in the absence of the party or an order granting or denying a nonsuit or a motion to strike out evidence or testimony; a ruling sustaining or overruling an objection to evidence; and any statement or other action of the court in commenting upon or in summarizing the evidence. . . ."

Real party contends that the bifurcation order falls within the categories specified in section 647 and, in any event, it made its position on bifurcation known to the court within a reasonable time after the order. This latter statement is supported only by the declaration of Linda Blackwell who stated: "I recall making an objection to bifurcation in the *Medo* case. I do not recall whether the objection was made on or off the record." This is

insufficient to support a finding that an objection to bifurcation was made to the court within a reasonable time after the order. Furthermore, all the points that real party makes regarding its objections to bifurcation flounder on the silence of its attorneys when the court specifically stated it would make the order for bifurcation and separate juries "unless there is strong objection from counsel." Had counsel objected, and especially had counsel pointed to the recent amendment of section 3295, it might well be that separate juries would not have been ordered.

We conclude that petitioners should not be deprived of the first jury's finding of liability. That does not mean that evidence of conduct upon which liability was determined may not be presented to the second jury; it means only that the second jury may not again determine liability or the amount of compensatory damages.

Let a peremptory writ of mandate issue directing respondent court to vacate its order of April 22, 1988, insofar as that order requires a redetermination of liability and compensatory damages.

Poché, J., and Channell, J., concurred.