29 Cal.App.4th 272 (1994)
34 Cal. Rptr.2d 490
CITY OF EL MONTE et al., Petitioners,
v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; RUDY LEE BULLEN, Real Party in Interest.
Docket No. B084361.
Court of Appeals of California, Second District, Division Five.
October 14, 1994.
*274 COUNSEL
James Francis Wilson for Petitioners.
No appearance for Respondent.
R. Samuel Paz, David A. Xavier and Francisco A. Suarez for Real Party in Interest.
OPINION
ARMSTRONG, J.
In this original proceeding, we hold that when a plaintiff obtains a verdict entitling him to punitive damages, but allows the jury to be discharged without presenting evidence relevant to the amount of punitive damages, the court may not "reconvene another jury" to consider that evidence.

FACTS AND PROCEDURAL HISTORY
The relevant facts necessary to this opinion, briefly stated, are as follows:
Rudy Lee Bullen and Esther Bullen sued the City of El Monte and two of its police officers, George Mendoza and Michelle States, for compensatory and punitive damages. Prior to trial, the court granted defendants' application, pursuant to Civil Code section 3295, subdivision (d).[1] That section affects the order of proof at trial, precluding the admission of evidence of *275 defendants' financial condition until after the jury has returned a verdict for plaintiffs awarding actual damages and found that one or more defendants were guilty of "oppression, fraud or malice," in accordance with Civil Code section 3294.
On March 22, 1994, the jury rendered its verdict, finding that Officer States had committed a battery upon Mr. Bullen, had used excessive force, and had acted with "malice, oppression or fraud" so as to warrant the imposition of punitive damages against her. The jury awarded Mr. Bullen $30,000 in compensatory damages against the City and Officer States. The jury found no liability on the part of Officer Mendoza and found in defendants' favor as to Mrs. Bullen's claims.
Since the trial judge was unavailable at the time the verdict was rendered, the verdict was taken by another judge. After the verdict was read, the court asked if there were "any other matters before we discharge the jury?" Plaintiffs' counsel responded, "I would inquire if the jurors would like to talk to any counsel that they'd be invited to do so." The court accommodated this request, then asked, "Anything else before I discharge the jury?" Defense counsel asked that the jury be polled, and it was. The court then discharged the jury and thanked the jurors for their service. Neither party objected to the discharge of the jury. Prior to the time the jury was discharged, plaintiffs' counsel made no effort to proceed with the trial and made no mention of additional evidence on the amount of punitive damages.
However, as the jury was leaving the courtroom, plaintiffs' counsel realized that he had not produced evidence of defendants' financial worth. Believing the jury should not have been discharged because it had not decided the amount of punitive damages which Mr. Bullen should be awarded, plaintiffs' counsel saw defense counsel in the hall and apprised him of the mistake. Defense counsel did not respond.
On March 24, 1994, plaintiffs' counsel filed a motion for a directed verdict "for a specified amount of punitive damages." As defendants' counsel correctly pointed out, the court could not enter a "directed verdict" for a specified amount of punitive damages because there was no evidence upon which the court could base such a verdict.
The respondent court (who was the trial judge in the case) heard the motion for a directed verdict on May 6, 1994. The court expressed its view that "that portion of the trial [the amount of punitive damages] has not been *276 completed yet," and stated it was going to "just reconvene another jury, and we'll let them decide...." The court then set the case for trial before another jury on June 13, 1994. This was the first time any mention had been made of a separate trial on the punitive damages issue before a different jury. Defendants timely objected to the procedure ordered by the court, then asked for and received a continuance to file this petition. Defendants now seek a writ of mandate directing the respondent court to vacate this order.
We conclude the court's ruling was an abuse of discretion and that defendants' remedy by way of appeal from a final judgment is inadequate because petitioners would have to incur the expense of a trial which should not go forward. Accordingly, the issuance of a writ of mandate is appropriate.

DISCUSSION
(1) Evidence of the defendant's financial condition is a prerequisite to an award of punitive damages. (Adams v. Murakami (1991) 54 Cal.3d 105, 115-116 [284 Cal. Rptr. 318, 813 P.2d 1348].) In order to protect defendants from the premature disclosure of their financial position when punitive damages are sought, the Legislature enacted Civil Code section 3295. (Medo v. Superior Court (1988) 205 Cal. App.3d 64, 67 [251 Cal. Rptr. 924].) (2) In this case, pursuant to defendants' pretrial motion made pursuant to subdivision (d) of that section, the court deferred admission of this financial evidence until after the jury determined that punitive damages were warranted against one or more defendants. Once the jury made the finding that Mr. Bullen was entitled to punitive damages, he had the burden of proof as to each fact the existence of which was essential to his claim. (Evid. Code, § 500.) The burden of producing evidence on the amount of punitive damages which should be awarded was initially on Mr. Bullen. (Evid. Code, § 550, subd. (d).) He did not put on evidence prior to the time the jury was discharged, at which time the trial concluded.
The respondent court recognized that plaintiffs' failure to proceed was simply an oversight resulting from counsel's euphoria created by the favorable jury verdict. In order to remedy what it perceived to be an unfair result, the court, "in the interest of simple fairness," sought to resolve the matter simply by "convening another jury" to determine the appropriate amount of punitive damages. This it could not do because section 3295, subdivision (d), is quite explicit: "Evidence of profit and financial condition shall be presented to the same trier of fact that found for the plaintiff and found one or more defendants guilty of malice, oppression or fraud." This language leaves no room for the exercise of discretion unless the defendant expressly or *277 tacitly agrees otherwise. (Medo v. Superior Court, supra, 205 Cal. App.3d at p. 64.)[2] In this case, defendants did not do either.
In Medo, the court announced at the outset of the trial that the issue of punitive damages would be bifurcated and tried to a separate jury, "`unless there is strong objection from counsel.'" (205 Cal. App.3d at p. 69.) Counsel for plaintiff agreed. Defense counsel remained silent, allowed the liability phase to go forward, and said nothing when a verdict was rendered in plaintiff's favor and the jury was discharged. Defendant then moved for dismissal or, alternatively, for a mistrial, "on the ground that, the jury having been discharged, there was no way to comply with section 3295." (Id. at p. 67.) The Medo court held that defendant had waived his right to have the punitive damages phase of the case tried by the same jury which determined liability, since the trial court announced at the beginning of trial that it would bifurcate the trial "`unless there is strong objection from counsel,'" and defense counsel made no objection. (Id. at pp. 69-70.)
In contrast to Medo, nothing in the record here suggests, nor do plaintiffs contend, that the court intended to employ two juries in this case. The court's order precluding the admission of evidence regarding defendants' financial condition was one of twelve in limine motions in which the court determined which evidence would be admitted, and in what order. That being the case, it was the responsibility of plaintiffs' counsel to go forward with the evidence necessary to plaintiffs' case. In our adversary system, defense counsel had no obligation to help try plaintiffs' case by pointing out evidence which had been omitted. Nor do we believe that defense counsel was required to advise the court of this deficiency in plaintiffs' case. In fact, defense counsel would have violated his obligation to his clients had he done so.
Nor are we persuaded, as is our dissenting colleague, that People v. Saunders (1993) 5 Cal.4th 580 [20 Cal. Rptr.2d 638, 853 P.2d 1093] is controlling. Saunders was a criminal case in which the issue of defendant's prior convictions was bifurcated from the substantive charges at defendant's request, as required by People v. Bracamonte (1981) 119 Cal. App.3d 644 [174 Cal. Rptr. 191]. Although Penal Code section 1025 requires that the question of whether defendant "has suffered such previous conviction must be tried by the jury which tries the issue upon the plea of not guilty, ..." and Penal Code section 1164, subdivision (b), provides that the jury shall not *278 be discharged until it has determined the truth of any prior conviction alleged, whether in the same proceeding or a bifurcated proceeding, the court in Saunders discharged the jury after it reached a verdict on the substantive charges, and defendant personally waived his right to a jury trial on the priors. After the court trial on the priors, defendant changed his mind and was permitted to withdraw his jury waiver. Defendant then entered a plea of once in jeopardy as to the priors and moved to dismiss the allegations of prior convictions. The motion was denied, the truth of the alleged prior convictions was tried to a new jury, and the jury found each of the allegations to be true. Defendant then appealed, arguing, among other things, that by impaneling a new jury to determine the truth of the prior conviction allegations, the trial court violated his statutory right to a determination of the prior convictions by the same jury that determined his guilt. The Supreme Court rejected this argument, and held that by enacting Penal Code sections 1025 and 1164, the Legislature did not intend to enable the defense to "create a procedural trap that would enable defense counsel to ambush the trial judge and deprive the People of their statutory right" to prove the truth of alleged prior convictions. (People v. Saunders, supra, 5 Cal.4th at pp. 590-591.)
In Saunders, the Supreme Court addressed a recurring problem in criminal cases: what procedure should be followed where the trial is bifurcated and the trial court, in violation of Penal Code section 1164, discharges the jury before the second phase of the trial. We do not believe that the Supreme Court intended Saunders to apply to all bifurcated trials, whether civil or criminal, or that Saunders compels the result urged by the dissent.
Saunders is nonetheless instructive here. One holding of Saunders is that a defendant may not "sandbag" the court or opposing counsel by failing to object when the jury is discharged, then later assert his right to have the truth of prior conviction allegations tried by the same jury which tried the substantive offenses. That holding was the result of certain facts peculiar to Saunders which are not present here. When the jury in Saunders rendered its verdict and was discharged, the case was continued to the following day for trial on the priors. (People v. Saunders, supra, 5 Cal.4th at p. 580.) In other words, it was clear to all concerned that the case was not over, and that the remainder of the case would be tried by the court the following day. In that instance, defense counsel had "the duty of looking after [defendant's] legal rights and of calling the judge's attention to any infringement of them." (Id. at p. 590.) By failing to do so, defendant forfeited his right to have the truth of the prior conviction allegations tried before that jury. Applying this aspect of Saunders to the present case, we agree that had the court announced its intention to discharge the jury, continue the case to the next day, and then *279 impanel a second jury to determine the amount of punitive damages, defendants would have forfeited their rights under section 3295 to have that aspect of the case tried by the same jury which determined liability. That is not what happened here, however. When the jury was discharged, the case was not continued for the second phase of the trial; it was simply over.
This brings us to the second aspect of Saunders: when the trial court commits an error which results in a forfeiture, who has the obligation to point out the error? In Saunders, the Supreme Court held that the defendant, who had asserted his right to a bifurcated trial, had the obligation to preserve that right prior to the jury being discharged. Certainly the district attorney, who had easily proved up the priors in a court trial and presumably believed he could do so again, had no obligation to assert defendant's right to a jury trial on his behalf.
Likewise, we find nothing in Saunders which would obligate defendants' counsel in this case to alert the court to the fact that plaintiffs' counsel had not proved his entire case. Nor was defendant's counsel obliged to prevent the court from making an error which could only benefit defendants. Indeed, our Supreme Court has shown little sympathy toward parties who fail to prove their case, then later seek relief to correct the mistake. In People v. Superior Court (Marks) (1991) 1 Cal.4th 56 [2 Cal. Rptr.2d 389, 820 P.2d 613], the defendant was found guilty of murder with special circumstances and sentenced to death. However, the jury failed to specify the degree of murder, contrary to the mandate of Penal Code section 1157. Defendant's conviction was reversed because the trial court, after expressing doubt about defendant's competency to stand trial, failed to hold a competency hearing pursuant to Penal Code section 1368. (People v. Marks (1988) 45 Cal.3d 1335 [248 Cal. Rptr. 874, 756 P.2d 260].) In its opinion remanding the case for retrial, the Supreme Court noted that the jury's verdict did not specify the degree of murder of which the defendant had been convicted. (Id. at p. 1344.)
On remand, the court found defendant competent and reinstated all charges, including first degree murder. Defendant entered pleas of former acquittal and once in jeopardy on the first degree murder charge, arguing that since the jury had not determined the degree of murder as required by Penal Code section 1157, that section operated to preclude the People from retrying him on any offense greater than second degree murder. The trial court accepted defendant's pleas, but the People succeeded in obtaining a writ from the Court of Appeal directing the trial court to reinstate all charges.
The Supreme Court reversed, finding that double jeopardy barred retrial of any charge greater than second degree murder. In so holding, the Supreme *280 Court stated: "We perceive no unfairness to the People in our holding. The prosecution is not deprived of its `one complete opportunity to convict those who have violated [the] laws....' When the verdict is `deemed of the lesser degree' by operation of law, the prosecution bears at least partial responsibility. The consequences of an irregular verdict are well settled, and nothing precludes the prosecution from calling the deficiency to the court's attention before it discharges the panel.... Since any failure to do so results from neglect rather than lack of notice and opportunity to be heard, the People's right to due process is accordingly not offended." (People v. Superior Court (Marks), supra, 1 Cal.4th at p. 77 citations and fn. omitted.) The court noted that the United States Supreme Court was of a like mind, and had "repeatedly counseled against subjecting a defendant to further proceedings to allow the prosecution the opportunity to ameliorate trial deficiencies, evidentiary or procedural, that could have been otherwise timely corrected." (Ibid.)
Plaintiffs' counsel in this case is like the prosecutor in Marks, not the defendant in Saunders. It was the obligation of plaintiffs' counsel to call any deficiency in the verdict to the court's attention before it discharged the jury, so that the deficiency could be timely corrected. Since counsel failed to do so, plaintiffs must accept the verdict as rendered.

CONCLUSION
Medo served as a warning to defendants, that the right to have the liability and punitive damages phases of the trial tried by one jury may be waived where the defendant knows up front that two juries will be employed, and fails to object when the first is discharged after the liability phase. This case should serve as a warning to plaintiffs that in the absence of a clear understanding that two juries will be employed, plaintiffs must put on their entire case, including evidence relevant to the amount of punitive damages, before the jury is discharged. Failure to do so results in a forfeiture of the right to punitive damages.

DISPOSITION
Let a peremptory writ of mandate issue directing the respondent court to vacate its order of May 19, 1994, extending the time for the resumption of trial in the case of Bullen v. City of El Monte (Super. Ct. L.A. County, *281 No. KC003010, and thereafter to enter a judgment in accordance with the jury verdict of March 22, 1994.
Turner, P.J., concurred.
GRIGNON, J., Dissenting.
In my view, defendants have waived the statutory right to have punitive damages tried to the same jury which determined her liability, by failing to object to the discharge of the jury prior to the punitive damage phase of the trial. Plaintiff is entitled to present his evidence on the amount of punitive damages. This issue is controlled by our Supreme Court's decision in People v. Saunders (1993) 5 Cal.4th 580 [20 Cal. Rptr.2d 638, 853 P.2d 1093]. In Saunders, a criminal defendant was held to have waived his statutory right to have prior felony conviction allegations tried to the same jury which determined his guilt of the underlying offenses in a bifurcated trial, by failing to object to the discharge of the jury before trial on the prior felony conviction allegations.
The facts in this case are not in dispute. Rudy Lee Bullen and Esther Maria Bullen sued the City of El Monte and two of its police officers, George Mendoza and Michelle States, for personal injuries. Plaintiffs sought compensatory damages against all defendants and punitive damages against the police officers. Upon the pretrial request of the defense, evidence of the police officers' financial condition was excluded until such time as the jury found one or both of the officers had acted with malice, oppression or fraud.
On March 3, 1994, trial of the liability phase by jury commenced before Judge Richard Van Dusen. On March 17, 1994, the jury began deliberations. The jury arrived at a verdict in the first phase at approximately 5 p.m. on March 22, 1994. Judge Van Dusen was unavailable and, therefore, Judge Peter Meeka presided over the taking of the verdict. Prior to taking the verdict, Judge Meeka inquired of the court clerk whether the trial had been bifurcated; the court clerk incorrectly informed Judge Meeka there had been no bifurcation. The jury rendered a verdict in favor of all defendants against Esther Maria Bullen. The jury found in favor of Rudy Lee Bullen against all defendants and awarded him $30,000 in compensatory damages. The jury further found that Officer States had committed a battery on Rudy Bullen by use of unreasonable or excessive force and had acted with malice, oppression or fraud, warranting the imposition of punitive damages.
After the verdict was read, Judge Meeka inquired if there were any other matters before he discharged the jury. Counsel for plaintiffs requested that the jurors be advised that they were permitted to speak to counsel if they so desired. The jury was so informed. Judge Meeka again inquired whether *282 there were any other matters before he discharged the jury. Defense counsel requested that the jurors be polled. The jurors were polled. Thereafter, Judge Meeka discharged the jury. After the jurors were excused, counsel and Judge Meeka had a brief conversation concerning exhibits. Once again, Judge Meeka asked if there was anything further; defense counsel stated, "Nothing further."
All the jurors left except one, who stayed to speak to counsel. As the jurors left the courtroom, plaintiffs' counsel suddenly realized the jury should not have been discharged, because the punitive damage phase of the trial was still pending. Plaintiffs' counsel immediately notified defense counsel, who did not respond. Plaintiffs' counsel notified the court clerk, but Judge Meeka was gone and the courtroom was closed. On the next day, March 23, 1994, plaintiffs' counsel reviewed his records and confirmed punitive damages had been bifurcated. One day later, on March 24, 1994, plaintiffs' counsel informed Judge Meeka's clerk of the problem. Both counsel met that same day with Judge Meeka in chambers to discuss the problem.
On March 28, 1994, plaintiff Rudy Bullen moved for a directed verdict for a specified amount of punitive damages "or, in the alternative, for a mistrial or that the jury be reconvened." Defendants opposed the motion. A hearing was held on May 5, 1994, before Judge Van Dusen. Judge Van Dusen determined that the failure to advise Judge Meeka the trial had been bifurcated was inadvertent and to the extent it was intentional on the part of defense counsel, it would be unfair to permit defendant to take advantage of the situation. Judge Van Dusen explained: "[I'm n]ot really granting a mistrial. I'm really saying I believe that portion of the trial has not been completed yet. An error was made by the various parties. They allowed the jury to leave without deciding that[. I]t was simply a mistake. The judge who was handling it was not the judge who handled the case all the way through. It was somebody else. [¶] He inquired; he got the wrong information. He inquired again and still got the wrong information. And it's certainly not his fault. He was trying to find out, but did not know and cannot look in the file. None of the [two] counsel who were present notified that judge. As far as I'm concerned, it's not a mistrial. The trial is not completed yet."
Judge Van Dusen ordered: Plaintiff's motion for a directed verdict is denied. "The court hereby ORDERS that trial in the within action be resumed, and that, pursuant to Civil Code § 3295, `Phase II' of said trial, on the issue of the determination of the reasonable amount of punitive damages to be imposed against the defendant, MICHELLE STATES, be conducted to its conclusion, either as a court trial, with the court acting as the trier of fact on *283 the issue of the amount of punitive damages to be imposed; or, as a jury trial before a new and different jury to be convened for the purpose of adjudicating `Phase II' of these proceedings."
Civil Code section 3295, subdivision (d) requires a court to bifurcate the trial of the amount of the punitive damage award from the remainder of the trial upon application of the defendant; the same trier of fact must determine the amount of punitive damages as determined liability and the existence of "malice, oppression, or fraud." Although a defendant has a statutory right to have the same jury which determined liability determine punitive damages, a defendant may impliedly waive this statutory right by failing to timely object to a different procedure. (Medo v. Superior Court (1988) 205 Cal. App.3d 64, 69-70 [251 Cal. Rptr. 924].)
In Medo, the trial court bifurcated the punitive damage phase of the trial; for the convenience of the jury, the trial court ordered the two phases to be tried by separate juries. Defendant did not timely object to the procedure. Nor did defendant object when the first jury was discharged after returning a verdict in the first phase of the trial on liability and compensatory damages. The Court of Appeal concluded that defendant had waived its right to have the punitive damage phase tried by the same jury which determined liability and compensatory damages. Although recognizing the legislative purpose of the single jury requirement, the appellate court concluded plaintiffs "should not be deprived of the first jury's finding of liability. That does not mean that evidence of conduct upon which liability was determined may not be presented to the second jury; it means only that the second jury may not again determine liability or the amount of compensatory damages." (Medo v. Superior Court, supra, 205 Cal. App.3d at p. 70.)
Our Supreme Court has applied waiver to a criminal defendant's right to have the same jury which determined his or her guilt determine the truth or falsity of prior felony conviction allegations. (People v. Saunders, supra, 5 Cal.4th 580.) Saunders had been charged with various crimes and prior felony convictions had been alleged. At the request of the defense, the trial court bifurcated the trial of the underlying criminal offenses from the trial of the prior felony conviction allegations. Pursuant to Penal Code section 1025, Saunders had the right to have the truth or falsity of the prior conviction allegations determined by the same jury which determined his guilt. The jury returned a verdict of guilt and was discharged without having determined the prior conviction allegations and without Saunders waiving his right to a jury trial on the priors. Saunders did not object to the discharge of the jury. The next day Saunders waived his right to a jury and the allegations were found to be true after a court trial. Thereafter, Saunders was permitted to withdraw *284 his jury waiver. The truth of the allegations was tried to a second jury which found them to be true.
The Supreme Court concluded that Saunders's failure to object to the discharge of the first jury precluded appellate relief on the ground of statutory error; Saunders had forfeited his statutory right to the same jury. (People v. Saunders, supra, 5 Cal.4th at pp. 589-590.) "`"An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been, but was not, presented to the lower court by some appropriate method.... The circumstances may involve such intentional acts or acquiescence as to be appropriately classified under the headings of estoppel or waiver.... Often, however, the explanation is simply that it is unfair to the trial judge and to the adverse party to take advantage of an error on appeal when it could easily have been corrected at the trial."' [Citation; italics in original.] `"The purpose of the general doctrine of waiver is to encourage a defendant to bring errors to the attention of the trial court, so that they may be corrected or avoided and a fair trial had ...."' [Citation.] `"No procedural principle is more familiar to this Court than that a constitutional right," or a right of any sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." [Citation.]' [Citation.]" (Ibid.)
The Supreme Court continued: "`The rationale for this rule [has been] aptly explained ...: "`In the hurry of the trial many things may be, and are, overlooked which would readily have been rectified had attention been called to them. The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them. If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal.'"'" (People v. Saunders, supra, 5 Cal.4th at p. 590.) The Supreme Court noted that a different rule would permit defense counsel to "ambush" the trial court and the prosecutor and deprive the prosecution of its statutory right to prove the prior felony conviction allegation and enhance a defendant's sentence. (Id. at pp. 590-591.)
When confronted with the argument that its holding would require the defense to bring to the trial court's attention the prosecution's failure to present evidence at the appropriate time, the Supreme Court replied, "[T]his argument ... fails to consider that the issue of the prior conviction enhancement had been bifurcated from the issue of guilt at defendant's request, and that the portion of the proceedings concerning the prior conviction *285 allegations had not yet begun when the jury was dismissed. Thus, our conclusion does not require the defense to remind the prosecution to present its evidence in a timely manner, but merely requires the defense to object to the discharge of the jury in the event it wishes to assert its statutory right to have the same jury that found defendant guilty also determine the truth of the prior conviction allegations." (People v. Saunders, supra, 5 Cal.4th at p. 591, fn. 7.)
In my view, Saunders is dispositive of the issues raised in this case. Saunders establishes the following rule: Where a defendant has the statutory right to have a portion of the litigation heard in a bifurcated proceeding by the same jury, the defendant, at whose request the trial is bifurcated, may not assert his or her statutory right to have the same jury try the second phase of the trial, if the jury is discharged following the first phase without timely objection by the defendant. Otherwise, a defendant would be permitted to request bifurcation, remain silent when the jury is inadvertently discharged after the first phase and take advantage of the trial court and opposing counsel by preventing presentation of the second phase of the trial.
Although Saunders may certainly be distinguished from the facts of this case in some respects, the rule fashioned by the Supreme Court in Saunders is reasonably and equitably applied under these circumstances. The punitive damage phase of this litigation was bifurcated from the liability phase at the request of defendants. At the conclusion of the first phase, the jury determined liability in favor of one of the plaintiffs and awarded compensatory damages. The jury further determined that a defendant's conduct had subjected her to punitive damages. In the excitement of the moment, plaintiff's counsel simply forgot the second phase. There is nothing in the record to indicate that defense counsel similarly forgot the second phase. A clear implication from the record is that defense counsel was aware of the second phase, recognized the mistake and remained silent. Indeed, defense counsel did more than remain silent. When asked by the trial court if there was anything further, defense counsel affirmatively replied that there was nothing further.
Plaintiff's counsel, realizing his mistake as the jury was leaving, immediately tried to correct the problem, but to no avail. Thereafter, he diligently brought the matter to the attention of the trial court. The trial court ordered the second phase of the trial to begin either as a court trial or as a jury trial with a new jury. In my view, the trial court not only properly exercised its *286 discretion, but would have abused its discretion by refusing to permit plaintiff to present evidence as to punitive damages.[1]
I would deny the petition for writ of mandate or prohibition.
NOTES
[1] Section 3295, subdivision (d), provides: "The court shall, on application of any defendant, preclude the admission of evidence of that defendant's profits or financial condition until after the trier of fact returns a verdict for plaintiff awarding actual damages and finds that a defendant is guilty of malice, oppression, or fraud in accordance with Section 3294. Evidence of profit and financial condition shall be admissible only as to the defendant or defendants found to be liable to the plaintiff and to be guilty of malice, oppression or fraud. Evidence of profit and financial condition shall be presented to the same trier of fact that found for the plaintiff and found one or more defendants guilty of malice, oppression or fraud." All further statutory references are to the Civil Code unless otherwise indicated.
[2] The court, on its own motion, is authorized to bifurcate the trial of issues, other than punitive damages, and if the issue so tried does not result in a judgment, the trial of the remaining issues may be before the same or another jury as ordered by the court. (Code Civ. Proc., § 598.)
[1] It is true that plaintiff brought the matter to the trial court's attention pursuant to the wrong motion. Plaintiff was certainly not entitled to a directed verdict for a specific amount of punitive damages and the trial court properly denied this motion. Plaintiff did request in the alternative that the jury be reconvened or a mistrial declared. Perhaps, plaintiff should have brought a motion to be relieved from default. The form of the motion is, however, not as important as its nature. In this case, the trial court properly divined the nature of the motion and properly ruled. The effect of the trial court's ruling was simply to continue with the trial under the existing circumstances, either as a court trial or with a new jury for the second phase.