Opinion
ARMSTRONG, J.
In this original proceeding, we hold that when a plaintiff obtains a verdict entitling him to punitive damages, but allows the jury to be discharged without presenting evidence relevant to the amount of punitive damages, the court may not “reconvene another jury” to consider that evidence.
Facts and Procedural History
The relevant facts necessary to this opinion, briefly stated, are as follows:
Rudy Lee Bullen and Esther Bullen sued the City of El Monte and two of its police officers, George Mendoza and Michelle States, for compensatory and punitive damages. Prior to trial, the court granted defendants’ application, pursuant to Civil Code section 3295, subdivision (d).[1] That section affects the order of proof at trial, precluding the admission of evidence of *275 defendants’ financial condition until after the jury has returned a verdict for plaintiffs awarding actual damages and found that one or more defendants were guilty of “oppression, fraud or malice,” in accordance with Civil Code section 3294.
On March 22, 1994, the jury rendered its verdict, finding that Officer States had committed a battery upon Mr. Bullen, had used excessive force, and had acted with “malice, oppression or fraud” so as to warrant the imposition of punitive damages against her. The jury awarded Mr. Bullen $30,000 in compensatory damages against the City and Officer States. The jury found no liability on the part of Officer Mendoza and found in defendants’ favor as to Mrs. Bullen’s claims.
Since the trial judge was unavailable at the time the verdict was rendered, the verdict was taken by another judge. After the verdict was read, the court asked if there were “any other matters before we discharge the jury?” Plaintiffs’ counsel responded, “I would inquire if the jurors would like to talk to any counsel that they’d be invited to do so.” The court accommodated this request, then asked, “Anything else before I discharge the jury?” Defense counsel asked that the jury be polled, and it was. The court then discharged the jury and thanked the jurors for their service. Neither party objected to the discharge of the jury. Prior to the time the jury was discharged, plaintiffs’ counsel made no effort to proceed with the trial and made no mention of additional evidence on the amount of punitive damages.
However, as the jury was leaving the courtroom, plaintiffs’ counsel realized that he had not produced evidence of defendants’ financial worth. Believing the jury should not have been discharged because it had not decided the amount of punitive damages which Mr. Bullen should be awarded, plaintiffs’ counsel saw defense counsel in the hall and apprised him of the mistake. Defense counsel did not respond.
On March 24, 1994, plaintiffs’ counsel filed a motion for a directed verdict “for a specified amount of punitive damages.” As defendants’ counsel correctly pointed out, the court could not enter a “directed verdict” for a specified amount of punitive damages because there was no evidence upon which the court could base such a verdict.
The respondent court (who was the trial judge in the case) heard the motion for a directed verdict on May 6, 1994. The court expressed its view that “that portion of the trial [the amount of punitive damages] has not been *276 completed yet,” and stated it was going to “just reconvene another jury, and we’ll let them decide. . . .” The court then set the case for trial before another jury on June 13, 1994. This was the first time any mention had been made of a separate trial on the punitive damages issue before a different jury. Defendants timely objected to the procedure ordered by the court, then asked for and received a continuance to file this petition. Defendants now seek a writ of mandate directing the respondent court to vacate this order.
We conclude the court’s ruling was an abuse of discretion and that defendants’ remedy by way of appeal from a final judgment is inadequate because petitioners would have to incur the expense of a trial which should not go forward. Accordingly, the issuance of a writ of mandate is appropriate.
Discussion
Evidence of the defendant’s financial condition is a prerequisite to an award of punitive damages. (Adams v. Murakami (1991) 54 Cal. 3d 105, 115-116 [284 Cal.Rptr. 318, 813 P.2d 1348].) In order to protect defendants from the premature disclosure of their financial position when punitive damages are sought, the Legislature enacted Civil Code section 3295. (Medo v. Superior Court (1988) 205 Cal.App.3d 64, 67 [251 Cal.Rptr. 924].) In this case, pursuant to defendants’ pretrial motion made pursuant to subdivision (d) of that section, the court deferred admission of this financial evidence until after the jury determined that punitive damages were warranted against one or more defendants. Once the jury made the finding that Mr. Bullen was entitled to punitive damages, he had the burden of proof as to each fact the existence of which was essential to his claim. (Evid. Code, § 500.) The burden of producing evidence on the amount of punitive damages which should be awarded was initially on Mr. Bullen. (Evid. Code, § 550, subd. (d).) He did not put on evidence prior to the time the jury was discharged, at which time the trial concluded.
The respondent court recognized that plaintiffs’ failure to proceed was simply an oversight resulting from counsel’s euphoria created by the favorable jury verdict. In order to remedy what it perceived to be an unfair result, the court, “in the interest of simple fairness,” sought to resolve the matter simply by “convening another jury” to determine the appropriate amount of punitive damages. This it could not do because section 3295, subdivision (d), is quite explicit: “Evidence of profit and financial condition shall be presented to the same trier of fact that found for the plaintiff and found one or more defendants guilty of malice, oppression or fraud.” This language leaves no room for the exercise of discretion unless the defendant expressly or *277 tacitly agrees otherwise. (Medo v. Superior Court, supra, 205 Cal.App.3d at p. 64.)[2] In this case, defendants did not do either.
In Medo, the court announced at the outset of the trial that the issue of punitive damages would be bifurcated and tried to a separate jury, “ ‘unless there is strong objection from counsel.’ ” (205 Cal.App.3d at p. 69.) Counsel for plaintiff agreed. Defense counsel remained silent, allowed the liability phase to go forward, and said nothing when a verdict was rendered in plaintiff’s favor and the jury was discharged. Defendant then moved for dismissal or, alternatively, for a mistrial, “on the ground that, the jury having been discharged, there was no way to comply with section 3295.” (Id. at p. 67.) The Medo court held that defendant had waived his right to have the punitive damages phase of the case tried by the same jury which determined liability, since the trial court announced at the beginning of trial that it would bifurcate the trial “ ‘unless there is strong objection from counsel,’ ” and defense counsel made no objection. (Id. at pp. 69-70.)
In contrast to Medo, nothing in the record here suggests, nor do plaintiffs contend, that the court intended to employ two juries in this case. The court’s order precluding the admission of evidence regarding defendants’ financial condition was one of twelve in limine motions in which the court determined which evidence would be admitted, and in what order. That being the case, it was the responsibility of plaintiffs’ counsel to go forward with the evidence necessary to plaintiffs’ case. In our adversary system, defense counsel had no obligation to help try plaintiffs’ case by pointing out evidence which had been omitted. Nor do we believe that defense counsel was required to advise the court of this deficiency in plaintiffs’ case. In fact, defense counsel would have violated his obligation to his clients had he done so.
Nor are we persuaded, as is our dissenting colleague, that People v. Saunders (1993) 5 Cal.4th 580 [20 Cal.Rptr.2d 638, 853 P.2d 1093] is controlling. Saunders was a criminal case in which the issue of defendant’s prior convictions was bifurcated from the substantive charges at defendant’s request, as required by People v. Bracamonte (1981) 119 Cal.App.3d 644 [174 Cal.Rptr. 191]. Although Penal Code section 1025 requires that the question of whether defendant “has suffered such previous conviction must be tried by the jury which tries the issue upon the plea of not guilty, . . .” and Penal Code section 1164, subdivision (b), provides that the jury shall not *278 be discharged until it has determined the truth of any prior conviction alleged, whether in the same proceeding or a bifurcated proceeding, the court in Saunders discharged the jury after it reached a verdict on the substantive charges, and defendant personally waived his right to a jury trial on the priors. After the court trial on the priors, defendant changed his mind and was permitted to withdraw his jury waiver. Defendant then entered a plea of once in jeopardy as to the priors and moved to dismiss the allegations of prior convictions. The motion was denied, the truth of the alleged prior convictions was tried to a new jury, and the jury found each of the allegations to be true. Defendant then appealed, arguing, among other things, that by impaneling a new jury to determine the truth of the prior conviction allegations, the trial court violated his statutory right to a determination of the prior convictions by the same jury that determined his guilt. The Supreme Court rejected this argument, and held that by enacting Penal Code sections 1025 and 1164, the Legislature did not intend to enable the defense to “create a procedural trap that would enable defense counsel to ambush the trial judge and deprive the People of their statutory right” to prove the truth of alleged prior convictions. (People v. Saunders, supra, 5 Cal.4th at pp. 590-591.)
In Saunders, the Supreme Court addressed a recurring problem in criminal cases: what procedure should be followed where the trial is bifurcated and the trial court, in violation of Penal Code section 1164, discharges the jury before the second phase of the trial. We do not believe that the Supreme Court intended Saunders to apply to all bifurcated trials, whether civil or criminal, or that Saunders compels the result urged by the dissent.
Saunders is nonetheless instructive here. One holding of Saunders is that a defendant may not “sandbag” the court or opposing counsel by failing to object when the jury is discharged, then later assert his right to have the truth of prior conviction allegations tried by the same jury which tried the substantive offenses. That holding was the result of certain facts peculiar to Saunders which are not present here. When the jury in Saunders rendered its verdict and was discharged, the case was continued to the following day for trial on the priors. (People v. Saunders, supra, 5 Cal.4th at p. 580.) In other words, it was clear to all concerned that the case was not over, and that the remainder of the case would be tried by the court the following day. In that instance, defense counsel had “the duty of looking after [defendant’s] legal rights and of calling the judge’s attention to any infringement of them.” (Id. at p. 590.) By failing to do so, defendant forfeited his right to have the truth of the prior conviction allegations tried before that jury. Applying this aspect of Saunders to the present case, we agree that had the court announced its intention to discharge the jury, continue the case to the next day, and then *279 impanel a second jury to determine the amount of punitive damages, defendants would have forfeited their rights under section 3295 to have that aspect of the case tried by the same jury which determined liability. That is not what happened here, however. When the jury was discharged, the case was not continued for the second phase of the trial; it was simply over.
This brings us to the second aspect of Saunders: when the trial court commits an error which results in a forfeiture, who has the obligation to point out the error? In Saunders, the Supreme Court held that the defendant, who had asserted his right to a bifurcated trial, had the obligation to preserve that right prior to the jury being discharged. Certainly the district attorney, who had easily proved up the priors in a court trial and presumably believed he could do so again, had no obligation to assert defendant’s right to a jury trial on his behalf.
Likewise, we find nothing in Saunders which would obligate defendants’ counsel in this case to alert the court to the fact that plaintiffs’ counsel had not proved his entire case. Nor was defendant’s counsel obliged to prevent the court from making an error which could only benefit defendants. Indeed, our Supreme Court has shown little sympathy toward parties who fail to prove their case, then later seek relief to correct the mistake. In People v. Superior Court {Marks) (1991) 1 Cal.4th 56 [2 Cal.Rptr.2d 389, 820 P.2d 613], the defendant was found guilty of murder with special circumstances and sentenced to death. However, the jury failed to specify the degree of murder, contrary to the mandate of Penal Code section 1157. Defendant’s conviction was reversed because the trial court, after expressing doubt about defendant’s competency to stand trial, failed to hold a competency hearing pursuant to Penal Code section 1368. {People v. Marks (1988) 45 Cal.3d 1335 [248 Cal.Rptr. 874, 756 P.2d 260].) In its opinion remanding the case for retrial, the Supreme Court noted that the jury’s verdict did not specify the degree of murder of which the defendant had been convicted. {Id. at p. 1344.)
On remand, the court found defendant competent and reinstated all charges, including first degree murder. Defendant entered pleas of former acquittal and once in jeopardy on the first degree murder charge, arguing that since the jury had not determined the degree of murder as required by Penal Code section 1157, that section operated to preclude the People from retrying him on any offense greater than second degree murder. The trial court accepted defendant’s pleas, but the People succeeded in obtaining a writ from the Court of Appeal directing the trial court to reinstate all charges.
The Supreme Court reversed, finding that double jeopardy barred retrial of any charge greater than second degree murder. In so holding, the Supreme *280 Court stated: “We perceive no unfairness to the People in our holding. The prosecution is not deprived of its ‘one complete opportunity to convict those who have violated [the] laws. . . .’ When the verdict is ‘deemed of the lesser degree’ by operation of law, the prosecution bears at least partial responsibility. The consequences of an irregular verdict are well settled, and nothing precludes the prosecution from calling the deficiency to the court’s attention before it discharges the panel. . . . Since any failure to do so results from neglect rather than lack of notice and opportunity to be heard, the People’s right to due process is accordingly not offended.” (People v. Superior Court (Marks), supra, 1 Cal.4th at p. 77 citations and fn. omitted.) The court noted that the United States Supreme Court was of a like mind, and had “repeatedly counseled against subjecting a defendant to further proceedings to allow the prosecution the opportunity to ameliorate trial deficiencies, evidentiary or procedural, that could have been otherwise timely corrected.” (Ibid.)
Plaintiffs’ counsel in this case is like the prosecutor in Marks, not the defendant in Saunders. It was the obligation of plaintiffs’ counsel to call any deficiency in the verdict to the court’s attention before it discharged the jury, so that the deficiency could be timely corrected. Since counsel failed to do so, plaintiffs must accept the verdict as rendered.
Conclusion
Medo served as a warning to defendants, that the right to have the liability and punitive damages phases of the trial tried by one jury may be waived where the defendant knows up front that two juries will be employed, and fails to object when the first is discharged after the liability phase. This case should serve as a warning to plaintiffs that in the absence of a clear understanding that two juries will be employed, plaintiffs must put on their entire case, including evidence relevant to the amount of punitive damages, before the jury is discharged. Failure to do so results in a forfeiture of the right to punitive damages.
Disposition
Let a peremptory writ of mandate issue directing the respondent court to vacate its order of May 19, 1994, extending the time for the resumption of trial in the case of Bullen v. City of El Monte (Super. Ct. L.A. County, *281 No. KC003010, and thereafter to enter a judgment in accordance with the jury verdict of March 22, 1994.
Turner, P. J., concurred.

 Section 3295, subdivision (d), provides: “The court shall, on application of any defendant, preclude the admission of evidence of that defendant’s profits or financial condition until after the trier of fact returns a verdict for plaintiff awarding actual damages and finds that a defendant is guilty of malice, oppression, or fraud in accordance with Section 3294. Evidence of profit and financial condition shall be admissible only as to the defendant or defendants found to be liable to the plaintiff and to be guilty of malice, oppression or fraud. Evidence of profit and financial condition shall be presented to the same trier of fact that found for the *275 plaintiff and found one or more defendants guilty of malice, oppression or fraud.” All further statutory references are to the Civil Code unless otherwise indicated.

 The court, on its own motion, is authorized to bifurcate the trial of issues, other than punitive damages, and if the issue so tried does not result in a judgment, the trial of the remaining issues may be before the same or another jury as ordered by the court. (Code Civ. Proc., § 598.)