[No. B085852. Second Dist., Div. Seven. Oct. 26, 1995.]

RAMON RIVERA et al., Plaintiffs and Respondents, v.
ALBERT SASSOON, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III, IV, V and VI.

**COUNSEL**

Ronald P. Kaplan for Defendant and Appellant.

Perona, Langer & Beck, James A. Perona, Ellen R. Serbin and Nelson L. Cohen for Plaintiffs and Respondents.

**OPINION**

**JOHNSON, J.**—Eighteen tenants brought this action against their landlord, Albert Sassoon, for breach of the warranty of habitability, nuisance and other torts. A jury awarded the tenants $187,500 in general and special damages and $350,000 in punitive damages. Sassoon appeals. We affirm.

### FACTS AND PROCEEDINGS BELOW

From December 1989 to January 1992 Albert Sassoon owned rental property consisting of 12 detached units in the city of Bell Gardens. During this period Sassoon resided in France and never visited the property. His brother, Charles Sassoon, managed the property.[1]

The evidence showed that before Sassoon became owner, the property had been well maintained and any problems were promptly corrected. However, once the Sassoon brothers owned and managed the property, it began to fall into disrepair. City inspectors testified they made approximately 22 trips to the property between July 1990 and December 1991 and charged Albert Sassoon with 33 building and health code violations. The city sent several notices of these violations to both Albert and Charles Sassoon but the premises were not repaired. Indeed, conditions on the property grew worse as time went on.

The building and health code violations found on the property included hazardous electrical wiring, seepage of raw sewage under the buildings due to broken plumbing, infestation of rats, termites and other vermin, broken and deteriorated doors and windows, lack of hot and cold running water, lack of heat, leaking roofs and leaking plumbing fixtures. By November 1991 all the tenants on the property moved out.

The plaintiffs, former tenants of the Sassoon property, brought this action for breach of the warranty of habitability, nuisance and other torts. In the first phase of a bifurcated trial, the jury found in favor of the plaintiffs on the breach of warranty of habitability and nuisance causes of action. On the breach of warranty claim the jury awarded the tenants $19,740, representing the difference between the rent they paid and the rental value of the premises. The jury awarded the tenants $168,000 in damages for nuisance. The jury also made a special finding by clear and convincing evidence Albert Sassoon was guilty of oppression or malice in his conduct toward the tenants. In the second phase of the trial, the jury awarded the tenants punitive damages against Albert Sassoon in the sum of $350,000. Prior to the second phase of the trial on punitive damages, two jurors who had participated in the liability phase were dismissed due to financial hardship and replaced by two alternates.

On appeal, Sassoon argues the punitive damages award must be reversed because the punitive damages phase of the trial was not tried to "the same

---

[1]As used in this opinion, "Sassoon" refers to defendant Albert Sassoon unless otherwise noted.

trier of fact" that tried the liability phase as required by Civil Code section 3295, subdivision (d). He also argues the punitive damages award is not supported by substantial evidence, is excessive and is based on an erroneous ruling he is liable for the acts of his brother, Charles. Sassoon further contends there was no substantial evidence to support the award of general damages and the entire judgment should be reversed because plaintiffs' counsel made impermissible remarks to the jury regarding criminal proceedings against the Sassoon brothers. We reject all of these arguments for the reasons discussed below.

## Discussion

I. *The Substitution of Two Alternate Jurors After the Liability Phase of the Trial Did Not Result in a Different Trier of Fact Determining the Punitive Damages Phase of the Trial.*

■ Sassoon contends the substitution of two alternate jurors to try the punitive damages phase of the case violated Civil Code section 3295, subdivision (d) which provides in relevant part, "Evidence of profit and financial condition shall be presented to *the same trier of fact* that found for the plaintiff and found one or more defendants guilty of malice, oppression, or fraud." (Italics added.) We disagree with Sassoon's interpretation of the statute.

Previously, courts have held it is reversible error to try the punitive damages issue to a new jury after the jury which found liability has been excused. (*City of El Monte* v. *Superior Court* (1994) 29 Cal.App.4th 272, 276-277 [34 Cal.Rptr.2d 490]; *Medo* v. *Superior Court* (1988) 205 Cal.App.3d 64, 70 [251 Cal.Rptr. 924].) However, we have found no case which has addressed the effect of substituting an alternate juror for one of the regular jurors after a finding of liability has been made. Considering the purpose of Civil Code section 3295, subdivision (d) and the role of an alternate juror we conclude such a substitution does not violate the requirement the "same trier of fact" try both the liability and punitive damage phases of the case.

The reason for requiring the same jury to try the liability and punitive damage phases of the case is that "[p]unitive damages are not simply recoverable in the abstract. They must be tied to oppression, fraud or malice in the conduct which gave rise to liability in the case. Thus BAJI No. 14.71, the instruction on punitive damages, tells the jury that in arriving at an award of punitive damages, it is to consider the reprehensibility of the conduct of the defendant and that the punitive damages must bear a reasonable relation

to the actual damages. In order for a jury to evaluate the oppression, fraud or malice in the conduct giving rise to liability in the case, it must consider the conduct giving rise to liability." (*Medo* v. *Superior Court, supra,* 205 Cal.App.3d at p. 68, italics omitted.)

Alternate jurors are members of the jury panel which tries the case. They are selected at the same time as the regular jurors. They take the same oath and are subject to the same qualifications as the regular jurors. Alternate jurors hear the same evidence and are subject to the same admonitions as the regular jurors and, unless excused by the court, are available to participate as regular jurors. (Code Civ. Proc., §§ 233, 234.)

Thus, the alternate jurors are as aware of the reprehensibility of defendant's conduct as the regular jurors and, while they may not have personally decided the question of liability, they were members of the jury which did. They are in as good a position to evaluate the oppression, fraud or malice giving rise to liability as the jurors they replace. Furthermore, to accept Sassoon's interpretation of the statute would mean that in every case involving punitive damages if a juror had to be excused due to illness, family emergency or other good cause after the liability phase of the trial the court would have to grant the defendant's motion for a mistrial. As a matter of public policy and sound judicial administration, replacing the excused juror with an alternate is preferable to giving the defendant a second bite of the apple at plaintiff's expense due to circumstances beyond plaintiff's control.

We conclude therefore that when a juror who participated in the liability phase of the trial is excused and replaced by an alternate juror for the punitive damages phase the case is being tried to "the same trier of fact" which found for the plaintiff on the issues of liability and oppressive or malicious conduct.[2]

II-VI.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

---

[2]At the time the trial court seated the alternate jurors, the court offered a mistrial as an alternative to proceeding with the punitive damages phase. Sassoon's counsel stated he would "not ask for a mistrial at this time." However, because we hold the substitution of alternate jurors did not result in a "different" trier of fact trying the punitive damages phase of the case we do not reach the question whether Sassoon waived his right to have the same trier of fact try liability and punitive damages. (Cf. *Medo* v. *Superior Court, supra,* 205 Cal.App.3d at p. 70 with *City of El Monte* v. *Superior Court, supra,* 29 Cal.App.4th at pp. 277-280.)

*See footnote, *ante,* page 1045.

## DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Woods (Fred), J., concurred.