[No. S048329. June 2, 1997.]

RICHARD A. TORRES, SR., Plaintiff and Respondent, v. AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA, Defendant and Appellant.

772

## COUNSEL

Higgs, Fletcher & Mack, John Morris, Gilbert, Kelly, Crowley & Jennett, Clifford H. Woosley, Gray, Cary, Ware & Freidenrich, Marcelle E. Mihaila and Kathryn E. Karcher for Defendant and Appellant.

Hugh F. Young, Jr., Harvey M. Grossman, Kornblum Law Offices, Guy O. Kornblum, William A. Cerillo, John A. Dunning, Horvitz & Levy, Ellis J. Horvitz, Daniel J. Gonzalez and Christina J. Imre as Amici Curiae on behalf of Defendant and Appellant.

Thickstun & Stern, Marc O. Stern and Sean Hennessey for Plaintiff and Respondent.

Ian Herzog, Harvey R. Levine, Leonard Sacks, Douglas Devries, Roland Winkle, Robert Steinberg, Thomas G. Stolpman, William D. Turley, Mary E. Alexander, Bruce Broillet, David Casey, Jr., Tony Tanke, Leonard Esquina, Steven J. Keifield, David Rosen, Shernoff, Bidart & Darras,

William M. Shernoff, Sharon J. Arkin, Seltzer & Cody, Richard A. Seltzer, Quackenbush & Quackenbush and William C. Quackenbush as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**BAXTER, J.**—Civil Code section 3295, subdivision (d),[1] provides in pertinent part that a court "shall, on application of any defendant, preclude the admission of evidence of that defendant's profits or financial condition until after the trier of fact returns a verdict for plaintiff awarding actual damages and finds that a defendant is guilty of malice, oppression, or fraud in accordance with Section 3294. Evidence of profit and financial condition shall be presented to the same trier of fact that found for the plaintiff and found one or more defendants guilty of malice, oppression, or fraud."

We must decide whether this statutory provision entitles a defendant to a new trial on liability and compensatory damages following the reversal of an award of punitive damages. Application of settled rules of statutory construction leads us to conclude the answer is no.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This action represents the third in a series of lawsuits involving plaintiff Richard A. Torres, Sr. (Torres). The underlying history is as follows.

In 1979, Torres and his son, Anthony Torres, sued Fidel Rubalcaba (Rubalcaba) and Jose Ceballos (Ceballos) to recover for injuries they sustained when Ceballos collided with them while driving Rubalcaba's automobile. At the time of the accident, Rubalcaba was insured under a policy with the Automobile Club of Southern California (the Auto Club). The Auto Club provided a defense for Rubalcaba, but refused to represent Ceballos. In his first action, Torres and his son obtained a default judgment against Ceballos for $38,563 and thereafter dismissed the action against Rubalcaba.

In the second lawsuit, Torres and his son sued the Auto Club pursuant to Insurance Code section 11580, subdivision (b)(2), which allows a creditor to bring a direct action against an insurer after obtaining a judgment against the insured. Since the suit was brought on the judgment against Ceballos, Torres and his son were required to allege and prove that Ceballos was covered by the Auto Club's policy. In October 1986, Torres and his son prevailed in the action and were awarded damages in the total amount of $38,000. A month

---

[1]All further statutory references are to the Civil Code unless otherwise indicated.

later the Auto Club paid them over $55,000, a sum which included the judgment plus interest.

In December 1986, Torres and his son filed the instant action against the Auto Club for violations of Insurance Code section 790.03. A jury awarded Torres $4,251 in economic damages, representing costs and fees previously incurred and not reimbursed, and $20,000 in noneconomic damages for emotional distress. Torres's son was awarded $10,000 in noneconomic damages for emotional distress but nothing in economic damages. The jury also found the Auto Club guilty of malice, fraud or oppression, and in a subsequent hearing awarded punitive damages in the amount of $1.7 million.

After the trial, the Auto Club filed a motion for judgment notwithstanding the verdict. The trial court granted the motion as to Torres's son, finding no evidence to support a claim of emotional distress. The court denied the balance of the motion, thus affirming the $24,251 judgment in Torres's favor as well as the punitive damages award.

The Auto Club appealed. Although the Auto Club did not challenge the jury's determination on its liability for Insurance Code violations or the award of economic damages to Torres, it argued, among other things, that there was no substantial evidence of severe emotional distress to support the noneconomic damages award and no substantial evidence of malice, oppression or fraud to support the punitive damages award. The Auto Club also contended that the $1.7 million punitive damages award was excessive.

The Court of Appeal reversed. First, the court agreed that Torres had not made a sufficient showing for the recovery of noneconomic damages. Second, it found that the $1.7 million award was excessive in comparison to Torres's actual damages which, after subtracting the emotional distress award, amounted to approximately $4,000. But even though there was no question of error regarding the issue of liability or the amount of economic damages, the court nevertheless remanded the entire cause for a complete retrial. While recognizing that a reversal of only a portion of a judgment ordinarily does not require a full retrial, the court believed that section 3295, subdivision (d) (hereafter, section 3295(d)) did not allow for a retrial of only the amount of punitive damages.

We granted review and directed the parties to address the limited issue of whether, under section 3295(d), a defendant is entitled to a new trial on liability and compensatory damages following the reversal of an award of punitive damages and remand to the court for a new trial on punitive damages.

## II. Discussion

█ It is a firmly established principle of law that "[t]he appellate courts have power to order a retrial on a limited issue, if that issue can be separately tried without such confusion or uncertainty as would amount to a denial of a fair trial." (*Brewer* v. *Second Baptist Church* (1948) 32 Cal.2d 791, 801 [197 P.2d 713].) The underlying rationale is easy to discern: To require a complete retrial when an issue could be separately tried without prejudice to the litigants would unnecessarily add to the burden of already overcrowded court calendars and could be unduly harsh on the parties. (See *Little* v. *Superior Court* (1961) 55 Cal.2d 642, 645 [12 Cal.Rptr. 481, 361 P.2d 13].)

In *Brewer* v. *Second Baptist Church, supra,* 32 Cal.2d 791, we held it proper to order a retrial limited to punitive damages because such issue is "separate and distinct from that of actual damages, for they are assessed to punish the defendant and not to compensate for any loss suffered by the plaintiff." (32 Cal.2d at p. 801.) Subsequent to that decision, appellate courts have not hesitated to remand cases for retrial limited to punitive damages. (E.g., *Adams* v. *Murakami* (1991) 54 Cal.3d 105 [284 Cal.Rptr. 318, 813 P.2d 1348]; *Dumas* v. *Stocker* (1989) 213 Cal.App.3d 1262 [262 Cal.Rptr. 311]; *Alhino* v. *Starr* (1980) 112 Cal.App.3d 158 [169 Cal.Rptr. 136]; *Luke* v. *Mercantile Acceptance Corp.* (1952) 111 Cal.App.2d 431 [244 P.2d 764].)

In 1987, the Legislature enacted a comprehensive tort reform package that sought to clarify and reform the law in areas concerning punitive damages, product liability, conflicts in insurance defense, and fee limitations under the Medical Injury Compensation Reform Act. (Stats. 1987, ch. 1498, pp. 5777-5782.) As part of the package,[2] subdivision (d) was added to section 3295, providing: "The court shall, on application of any defendant, preclude the admission of evidence of that defendant's profits or financial condition until after the trier of fact returns a verdict for plaintiff awarding actual damages and finds that a defendant is guilty of malice, oppression, or fraud in accordance with Section 3294. Evidence of profit and financial condition shall be admissible only as to the defendant or defendants found to be liable to the plaintiff and to be guilty of malice, oppression, or fraud. *Evidence of profit and financial condition shall be presented to the same trier of fact that*

---

[2]Other reforms pertaining to punitive damages included raising the burden of proof for recovery to "clear and convincing evidence" (§ 3294, subd. (a)), revising the definitions of "malice" and "oppression" to require "despicable" conduct (§ 3294, subd. (c)), prohibiting claims for punitive damages from stating an amount or amounts (§ 3295, subd. (e)), and prohibiting complaints against health care providers from making claims for punitive damages unless permitted by court order (Code Civ. Proc., § 425.13).

*found for the plaintiff and found one or more defendants guilty of malice, oppression, or fraud.*" (§ 3295(d), italics added.)

The question here is whether the last sentence of section 3295(d) entitles a defendant to a new trial on all issues, including liability and compensatory damages, following the reversal of an award of punitive damages. To resolve this issue, we are guided by familiar rules of statutory construction. When construing a statute, we must " 'ascertain the intent of the lawmakers so as to effectuate the purpose of the law.' " (*People v. Cruz* (1996) 13 Cal.4th 764, 774-775 [55 Cal.Rptr.2d 117, 919 P.2d 731]; see *City of Huntington Beach* v. *Board of Administration* (1992) 4 Cal.4th 462, 468 [14 Cal.Rptr.2d 514, 841 P.2d 1034].) We begin by examining the language of the statute, giving the words their ordinary meaning. (*Nahrstedt* v. *Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 378 [33 Cal.Rptr.2d 63, 878 P.2d 1275].) "The words, however, must be read in context, considering the nature and purpose of the statutory enactment." (*Id.* at pp. 378-379.) In this regard, sentences are not to be viewed in isolation but in light of the statutory scheme. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

Section 3295 was enacted in 1979 to protect against the premature disclosure of a defendant's financial condition when punitive damages are sought. (*Medo* v. *Superior Court* (1988) 205 Cal.App.3d 64, 67 [251 Cal.Rptr. 924]; Stats. 1979, ch. 778, § 1, p. 2662.) Since its enactment, the statute has permitted courts to grant a protective order requiring a plaintiff to produce evidence of a prima facie case of liability for damages under section 3294 before permitting the introduction of evidence of a defendant's profits and financial condition. (§ 3295, subd. (a), added by Stats. 1979, ch. 778, § 1, p. 2662.) In 1980, the statute was amended to limit the circumstances under which evidence of a defendant's profits and financial condition may be discovered. (§ 3295, subd. (c), added by Stats. 1980, ch. 1242, § 2, p. 4218.) And since 1987, section 3295 has established rules for bifurcating the punitive damages portion of a trial and has barred complaints from disclosing the amount of punitive damages sought in an action. (§ 3295, subds. (d), (e), added by Stats. 1987, ch. 1498, § 6, pp. 5781-5782.) These restrictions safeguard defendants in two ways: "The pretrial discovery limits ensure that defendants are not coerced into settling suits solely to avoid unwarranted intrusions into their private financial affairs, while the evidentiary restrictions minimize potential prejudice to the defense in front of a jury." (*College Hospital Inc.* v. *Superior Court* (1994) 8 Cal.4th 704, 712 [34 Cal.Rptr.2d 898, 882 P.2d 894].)

As an evidentiary restriction, section 3295(d) requires a court, upon application of any defendant, to bifurcate a trial so that the trier of fact is not

presented with evidence of the defendant's wealth and profits until after the issues of liability, compensatory damages, and malice, oppression, or fraud have been resolved against the defendant. Bifurcation minimizes potential prejudice by preventing jurors from learning of a defendant's "deep pockets" before they determine these threshold issues.

We now turn to the last sentence of section 3295(d), which provides that "[e]vidence of profit and financial condition shall be presented to the same trier of fact that found for the plaintiff and found one or more defendants guilty of malice, oppression, or fraud." In the Auto Club's view, this provision means that the issues of liability, compensatory damages and the amount of punitive damages must always be decided by the same trier of fact, and that therefore such issues may never be decided by different juries. Construed in this manner, section 3295(d) effectively grants defendants the unqualified right to a complete retrial whenever the punitive damages portion of a judgment is reversed. Conversely, Torres argues that the "same-trier-of-fact" requirement simply defines and limits a new statutory right of bifurcation by clarifying that defendants are not entitled to have two separate juries resolve the issues when bifurcation is ordered. According to Torres, section 3295(d) does not entitle defendants to a new trial on liability and compensatory damages if only the punitive damages portion of a judgment is reversed.

Although section 3295(d) does not specify that the same-trier-of-fact restriction is applicable when the punitive damages portion of a judgment is reversed, neither does it expressly exclude such application. Accordingly, we must read the restriction in context, keeping in mind the nature and purpose of the enactment (*Nahrstedt* v. *Lakeside Village Condominium Assn.*, *supra*, 8 Cal.4th at pp. 378-379), as well as the overall statutory scheme (*Lungren* v. *Deukmejian*, *supra*, 45 Cal.3d at p. 735).

Read as a whole, subdivision (d) of section 3295 suggests that the same-trier-of-fact restriction is directly related to the consequences of a bifurcation. That is, the same trier of fact is required to resolve all of the bifurcated issues when a defendant has requested and obtained bifurcation. By requiring that the bifurcated issues be submitted to a single trier of fact, section 3295(d) promotes judicial economy and avoids delay.

This reading of section 3295(d) is entirely consistent with the underlying purpose of the statutory scheme. As explained earlier, the restrictions set forth at section 3295 serve to safeguard defendants against the premature disclosure, both in discovery and at trial, of their profits and financial condition. But disclosing such matters threatens no prejudice once a bifurcated trial has been held and the issues of liability, compensatory damages

and malice, oppression, or fraud have been resolved against the defense by both the trier of fact and the appellate court. It is therefore unnecessary to construe the same-trier-of-fact restriction to apply to retrials in order to give full effect to the statute's protective purpose.

Because section 3295(d) is silent on whether the same-trier-of-fact provision precludes retrials limited to the issue of punitive damages, we have reviewed the legislative history for clues as to the Legislature's intent in enacting the restriction. Significantly, we found nothing from which to infer a legislative intent to afford defendants a right to a complete retrial whenever punitive damages are reversed on appeal. If anything, the legislative history confirms the view that the provision requiring evidence of profit and financial condition to be "presented to the same trier of fact that found for the plaintiff and found . . . malice, oppression, or fraud" is intended simply as a restriction upon a defendant's right to a bifurcation of the issues.

Of note, legislative analyses of the bill to add subdivision (d) to section 3295 summarized the pertinent law existing prior to 1987 as authorizing but not requiring a court, upon the motion of any party or its own motion, to bifurcate the issues of a trial so that the issue of liability may be determined before the issue of damages. These analyses then described the proposed bill as requiring a court, "upon application of any defendant, to bifurcate the trial on [the] issue of punitive damages, *as specified*." (Sen. Com. on Judiciary, Rep. on Sen. Bill. No. 241 (1986-1987 Reg. Sess.) as amended Sept. 11, 1987, p. 2, italics added; Sen. 3d reading analysis, Sen. Bill No. 241 (1986-1987 Reg. Sess.) as amended Sept. 11, 1987, p. 1, italics added; see also Assem. Judiciary Com., Republican analysis of Sen. Bill. No. 241 (1986-1987 Reg. Sess.) as amended Sept. 11, 1987, p. 1 [identifying only the bifurcation aspects of the particular amendment].) Nowhere did these analyses mention or allude to any perceived problem in retrials limited to the issue of punitive damages and nowhere did they even remotely suggest that the proposed legislation aimed to curtail the power of appellate courts to order such retrials.

In circumstances such as these, we are assisted by the rule that courts should not presume the Legislature in the enactment of statutes intends to overthrow long-established principles of law unless that intention is made clearly to appear either by express declaration or by necessary implication. (*Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 92 [104 Cal.Rptr. 226, 501 P.2d 234], relying upon *County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 644 [122 P.2d 526].) As demonstrated above, the statute does not evince a clear expression of intent to strip the appellate courts of their authority under *Brewer* v. *Second Baptist Church, supra,* 32 Cal.2d 791, to

order retrials limited to the issue of punitive damages. Moreover, it is unnecessary to construe section 3295(d) in such a manner in order to give it effect. Accordingly, we conclude the statute does not compel a complete retrial upon the reversal of a punitive damages award.

Admitting that the legislative history sheds no light on the specific purpose of the same-trier-of-fact requirement, the Auto Club relies upon *Medo* v. *Superior Court, supra,* 205 Cal.App.3d 64, and *City of El Monte* v. *Superior Court* (1994) 29 Cal.App.4th 272 [34 Cal.Rptr.2d 490], to argue that "[e]very court of appeal which has directly addressed this issue has reached the same holding the Court of Appeal reached here—that the same jury must determine liability, the existence of malice, oppression, or fraud, and the amount of punitive damages." In particular, the Auto Club seizes upon language in *Medo* v. *Superior Court* stating that "the reason for requiring the same jury to determine both liability and punitive damages" is that "[p]unitive damages are not simply recoverable in the abstract. They must be tied to oppression, fraud or malice *in the conduct which gave rise to liability in the case.* Thus BAJI No. 14.71, the instruction on punitive damages, tells the jury that in arriving at an award of punitive damages, it is to consider the reprehensibility of the conduct of the defendant and that the punitive damages must bear a reasonable relation to the actual damages. In order for a jury to evaluate the oppression, fraud or malice in the conduct giving rise to liability in the case, it must consider the conduct giving rise to liability." (205 Cal.App.3d at p. 68.) We are not persuaded.

*Medo* v. *Superior Court, supra,* 205 Cal.App.3d 64, and *City of El Monte* v. *Superior Court, supra,* 29 Cal.App.4th 272, did not address whether section 3295(d) forbids an appellate court from remanding a cause for a limited retrial following reversal of a punitive damages award. Rather, those decisions considered the statute's application where juries were inadvertently and prematurely discharged prior to determining the amount of punitive damages. In such situations, it was held, section 3295(d)'s same-trier-of-fact restriction precludes a trial court from impaneling a second jury to decide the amount of punitive damages unless the restriction is "waived" by the defendant.

We need not and do not express an opinion on whether *Medo* v. *Superior Court, supra,* 205 Cal.App.3d 64, and *City of El Monte* v. *Superior Court, supra,* 29 Cal.App.4th 272, correctly determined the effect of the same-trier-of-fact restriction in the context of an improperly discharged jury. Even if we assume for purposes of argument that those decisions are correct, the fact remains that the Legislature did not clearly express an intent to upset settled law regarding the power of appellate courts to affirm the liability and

compensatory damage aspects of a judgment while ordering a retrial limited to punitive damages.

■ Moreover, our reasoning in *Brewer* v. *Second Baptist Church, supra,* 32 Cal.2d 791, illustrates why, in the context of retrials, it generally is unnecessary for the same jury to determine liability and punitive damages in order to ensure a reasonable relation between actual and punitive damages: "The rule that exemplary damages must bear a reasonable relation to actual damages . . . is designed solely to guard against excessive punitive damages. [Citation.] Upon a retrial of the issue of exemplary damages the jury can maintain that reasonable relation between general and exemplary damages without having to determine for itself the amount of general damages. The amount of general damages has been properly determined by the first jury. Upon a retrial of the issue of exemplary damages it is only necessary for the second jury to be advised of the amount of general damages already awarded in order that it may maintain a reasonable relation between such damages and the exemplary damages, if any, that it awards.[3] If it fails to do so and awards excessive exemplary damages, there is an adequate remedy by way of an appropriate motion before the trial court or by appeal." (32 Cal.2d at p. 802.) ■ In short, because there are adequate safeguards for ensuring that the jury in a limited retrial can maintain a reasonable relationship between actual and punitive damages, there ordinarily is no need for a complete retrial to guard against an excessive punitive damages award.

Finally, amici curiae supporting the Auto Club's position identify several "policy reasons" that, in their view, support a complete retrial mandate whenever the punitive damages portion of a judgment is reversed. In brief, they claim that a defendant's right to a fair hearing on punitive damages is jeopardized without a complete retrial of all issues and that a mandate for a single trial reaching all issues avoids any uncertainty concerning the defendant's wrongdoing and its connection to the plaintiff's injury. They also assert that a complete retrial requirement is not unfair to the plaintiff because a retrial of liability and other issues decided in the plaintiff's favor may be avoided if the plaintiff were to waive the punitive damages claim. In addition, amici curiae claim "there are no significant concerns of judicial economy at stake" because "[t]he only significant difference between a complete retrial on all issues and a second retrial limited to punitive damages would be in the verdict form submitted to the second jury."

Although the logic and strengths of these perceived "policy reasons" are debatable, our sole function in this case is to determine legislative intent.

---

[3]We note this passage does not restrict the trial court's discretion as to the scope of the evidence that may be introduced at retrial on the proper amount of punitive damages. (See *Sharp* v. *Automobile Club of So. Cal.* (1964) 225 Cal.App.2d 648, 654 [37 Cal.Rptr. 585].)

Hence, our decision may not rest on the weighing and balancing of public policy considerations. Our conclusion, based upon the application of firmly established rules of statutory construction, is that section 3295(d) does not entitle a defendant to a new trial on liability and compensatory damages following the reversal of a punitive damages award.

### III. DISPOSITION

The judgment of the Court of Appeal is reversed insorfar as it ordered a complete retrial of all issues, and the cause is remanded to the Court of Appeal for further proceedings consistent with the views expressed in this opinion.

George, C. J., Mosk, J., Kennard, J., Werdegar, J., Chin, J., and Brown, J., concurred.

Respondent's petition for a rehearing was denied July 16, 1997, and the opinion was modified to read as printed above.