PROVIDENT LIFE & ACCIDENT IN-SURANCE CO., a Corporation Plaintiff–Counter–defendant–Appellee

v.

Harry J. O'CONNOR, Defendant–Counter–claimant–Appellant

No. 00–55657.

D.C. No. CV–96–01213–GLT.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 1, 2001.

Decided Feb. 13, 2002.

Before O'SCANNLAIN and PAEZ, Circuit Judges, and SAMUEL P. KING, District Judge.*

* The Honorable Samuel P. King, Senior United States District Judge for the District of Hawai'i, sitting by designation.

MEMORANDUM **

Defendant and Counter-claimant Harry J. O'Connor appeals from the judgment of the district court. He challenges two evidentiary rulings as well as the jury's verdict of disability insurance fraud and its award of punitive damages. O'Connor also appeals from the district court's grant of summary judgment against O'Connor on his counterclaims. We have jurisdiction under 28 U.S.C. §§ 1291 and 1332 and affirm the judgment and rulings of the district court with regard to all issues except the question whether the punitive damages award was excessive. As the facts and prior proceedings are known to the parties, we restate them only as necessary to explain our disposition.

## I. EVIDENTIARY RULINGS

Evidentiary rulings are reviewed for abuse of discretion. *Old Chief v. United States,* 519 U.S. 172, 174 n. 1, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997); *United States v. Fleming,* 215 F.3d 930, 938 (9th Cir. 2000). To reverse on the basis of an erroneous evidentiary ruling, we must conclude not only that the district court abused its discretion, but also that the error resulted in "some prejudice." *Defenders of Wildlife v. Bernal,* 204 F.3d 920, 927–28 (9th Cir.2000).

## A. ATTORNEY COHEN'S TESTIMONY

■ O'Connor contends that Cohen's testimony regarding earlier out-of-court statements by O'Connor's wife Joan constitutes inadmissible hearsay and that the district court committed reversible error by admitting it under the "statements against interest" exception to the hearsay rule, Fed.R.Evid. 804(b)(3), and the "catch-

all" exception, Fed.R.Evid. 807. We conclude that, although the district court may have erred in admitting the evidence, the error was not prejudicial because substantial other evidence supported the jury's verdict. *See, e.g., United States v. Miller,* 676 F.2d 359, 364 (9th Cir.1982).

In addition to Cohen's testimony, Provident presented surveillance videotape and the testimony of Tiffany O'Connor, O'Connor's daughter, to show that O'Connor faked medical exams and misreported his daily activities. Tiffany O'Connor and Candice Witherspoon also testified that O'Connor threatened potential witnesses and accomplices to cover up his fraud. And although Provident's counsel, in his closing argument, emphasized that O'Connor threatened his wife, Cohen's testimony was not the strongest evidence against O'Connor and Provident's counsel also emphasized other evidence. Any prejudice to O'Connor was minimal because Mrs. O'Connor ultimately testified, and thus O'Connor was able to rebut and explain Cohen's testimony regarding her statements. *Cf. Mutuelles Unies v. Kroll & Linstrom,* 957 F.2d 707, 713 (9th Cir.1992) (holding that error was harmless where defendant was able to cross-examine a hearsay declaration with a previously obtained deposition).

■ Any suggestion that the Cohen evidence was improperly admitted because it was more prejudicial than probative, Fed. R.Evid. 403, is not properly before this court because O'Connor objected only on other grounds. *See Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1440 (9th Cir. 1990).

## B. EVIDENCE OF O'CONNOR'S OCCUPATION

■ Because his insurance policy contained a statutory incontestability clause,

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

O'Connor also contends that the district court committed reversible error by admitting evidence, other than the fact of O'Connor's statements in the policy application, regarding O'Connor's occupation. O'Connor argues that the incontestability clause barred Provident from challenging O'Connor's statement in his policy application that his occupation was that of a real estate developer, and that as a result, any evidence which put O'Connor's occupation in dispute or which indicated that O'Connor misrepresented his occupation was irrelevant and more prejudicial than probative.

Where an evidentiary ruling implicates conclusions of law, we review those conclusions of law de novo. *See Diamond v. City of Taft*, 215 F.3d 1052, 1055 (9th Cir.2000). The district court's ruling rested predominantly on its interpretation of California insurance law. The district court concluded that the statutory incontestability clause precluded only a challenge to the validity of the policy, not a claim that the insured was not disabled within the meaning of the policy. Because Provident had sold O'Connor an "own-occupation" policy, in which disability was defined by ability to do the job in which the insured was employed at the time of disability, the court concluded that Provident sought to introduce the evidence to show that O'Connor was not disabled within the meaning of the policy, not that the policy itself was invalid.

The district court's reasoning was correct and withstands the California Supreme Court's recent decision in *Galanty v. Paul Revere Life Insurance Co.*, 23 Cal.4th 368, 97 Cal.Rptr.2d 67, 1 P.3d 658 (Cal.2000). Unlike in *Galanty*, there is no "unavoidable" conflict here between the policy's "definitional and coverage provisions" and its incontestability clause. *Id.* at 671. The incontestability clause in O'Connor's policy does not address "occu-

pation" or attempt to limit the way in which an insurer may define coverage in terms of occupation. Because Provident was free to define coverage in terms of O'Connor's occupation, evidence regarding O'Connor's occupation was relevant and the district court did not err in admitting it over O'Connor's Rule 402 and Rule 403 objections. *See United States v. Jones*, 982 F.2d 380, 383 (9th Cir.1992).

## II. JURY VERDICT AND PUNITIVE DAMAGES AWARD IN FAVOR OF PROVIDENT

### A. SUFFICIENCY OF THE EVIDENCE CHALLENGE TO THE JURY'S FRAUD VERDICT

■ O'Connor next argues that there was insufficient evidence to support the jury's fraud verdict. To challenge a jury verdict on appeal on the basis of insufficient evidence, an appellant must have made a proper post-verdict Motion for Judgment as a Matter of Law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. *Saman v. Robbins*, 173 F.3d 1150, 1154 (9th Cir.1999). Although O'Connor filed a Motion for Judgment as a Matter of Law or, Alternatively, to Alter or Amend Judgment after the verdict on March 23, 2000, this motion did not address the fraud verdict. As a result, O'Connor has failed to preserve this issue for appeal.

■ Some circuits hold that a limited "plain error" exception exists to the rule that appellants must strictly comply with Rule 50(b) to raise an insufficient evidence challenge. *See, e.g., Shell v. Mo. Pac. R.R. Co.*, 684 F.2d 537, 540 (8th Cir.1982); *Urti v. Transp. Commercial Corp.*, 479 F.2d 766, 769 (5th Cir.1973); *see also Yohannon v. Keene Corp.*, 924 F.2d 1255, 1262 n. 7 (3d Cir.1991) (collecting cases). This is of no consequence, however, because the

jury's fraud verdict here does not constitute plain error. Plain error review is "extraordinarily deferential" and is "limited to whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency." *Patel v. Penman*, 103 F.3d 868, 878 (9th Cir.1996) (internal quotation marks omitted). Provident presented evidence of fraud from several sources, including evidence that O'Connor faked medical exams and misrepresented his occupation.

## B. SUFFICIENCY OF THE EVIDENCE CHALLENGE TO THE PUNITIVE DAMAGES AWARD

O'Connor has properly preserved his insufficient evidence challenge to the punitive damages award by making proper motions for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. Therefore, we review under a "substantial evidence" standard—"that is, such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir.2000), *cert. denied*, 531 U.S. 1126, 121 S.Ct. 881, 148 L.Ed.2d 790 (2001).

■ The jury awarded punitive damages under California Civil Code § 3294, which permits punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ.Code § 3294(a). We find O'Connor's contention that the jury must find all three statutory elements before it can award punitive damages to be contrary to the text of the statute and numerous California cases. *E.g., Michelson v. Hamada*, 29 Cal. App.4th 1566, 36 Cal.Rptr.2d 343 (Ct.App. 1994).

■ O'Connor also suggests that the evidence was insufficient to support the punitive damages award because Provident did not adequately establish O'Connor's wealth. To determine the amount of punitive damages, the jury must consider three factors: the nature of the defendant's acts, the amount of compensatory damages awarded, and the defendant's wealth or ability to pay. *Prof'l Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*, 727 F.2d 1470, 1473 (9th Cir.1984) (citing *Neal v. Farmers Ins. Exch.*, 21 Cal.3d 910, 148 Cal.Rptr. 389, 582 P.2d 980 (Cal.1978)). If the plaintiff fails to present evidence regarding the defendant's wealth, the punitive damages award cannot stand. *Adams v. Murakami*, 54 Cal.3d 105, 284 Cal.Rptr. 318, 813 P.2d 1348, 1357 (Cal. 1991). California cases generally hold that evidence of net worth at the time of trial, not income or revenue, is the most appropriate measure of wealth for punitive damages calculations. *E.g., id.* at 1352.

The jury heard three different numerical estimates of O'Connor's net worth and also had before it other evidence which tended to establish net income or assets, including such documentary evidence as statements of assets, liabilities, income, and expenses. This evidence was sufficient to meet the substantial evidence standard.

## C. EXCESSIVENESS OF THE PUNITIVE DAMAGES AWARD

■ O'Connor also contends that the punitive damages award of $800,000 was excessive as a matter of California law. In a diversity action where state law supplies the rule of decision, the role of the federal district court is "to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards developed under Rule 59 [of the Federal Rules of Civil Procedure], whether a new trial or remittitur should be ordered." *Browning–Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. 257, 279, 109 S.Ct. 2909, 106 L.Ed.2d 219

(1989). "The court of appeals should then review the district court's determination under an abuse-of-discretion standard." *Id.*

California law requires that punitive damages "bear a reasonable relationship to compensatory damages awarded." *Bouman v. Block*, 940 F.2d 1211, 1234 (9th Cir.1991); *Torres v. Auto. Club*, 15 Cal.4th 771, 781, 63 Cal.Rptr.2d 859, 937 P.2d 290 (1997). "[A] California court may set aside a punitive damage award only where the award 'appears excessive, or ... is so grossly disproportionate as to raise the presumption that it is the result of passion or prejudice.'" *Boyle v. Lorimar Prods., Inc.*, 13 F.3d 1357, 1360 (9th Cir.1994) (quoting *Neal*, 148 Cal.Rptr. 389, 582 P.2d at 990). Whether the award raises the presumption of passion and prejudice is measured by the same three factors that the jury uses to determine the amount of the award initially: "reprehensibility of defendant's misdeeds, the ratio between the compensatory and punitive damages, and the ratio between the damages and the defendant's net worth." *Id.* (quoting *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal.App.3d 1220, 1 Cal.Rptr.2d 301, 323 (Ct.App.1991)) (internal quotation marks omitted).

We find that the damages award is excessive in relation to O'Connor's wealth. As a general rule, punitive damages awards of approximately 10 percent of the defendant's net worth and less have been upheld by California courts, while awards exceeding that amount have been set aside as excessive. *Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc.*, 155 Cal.App.3d 381, 202 Cal.Rptr. 204, 211 (Ct.App.1984) (tabulating a sample of sixteen cases); *see also Michelson*, 36 Cal.Rptr.2d at 359 ("[Punitive] awards generally are not allowed to exceed 10 percent of the net worth of the defendant."); *People ex rel.*

*Dep't of Transp. v. Grocers Wholesale Co.*, 214 Cal.App.3d 498, 262 Cal.Rptr. 689, 700 (Ct.App.1989) (collecting cases).

Here, neither the jury nor the district court made any express findings regarding net worth against which we can apply this 10 percent benchmark. Nevertheless, the only evidence that suggests that O'Connor's net worth exceeded $8 million was Tiffany O'Connor's testimony that her father used to say that he was worth $25 million. Given that Provident made no attempt to establish any context, including when Tiffany heard these statements, that most of the events about which she testified happened when she was a young child, and that her report differed by almost an order of magnitude from other estimates of net worth, no reasonable jury would have relied on this statement. *Cf. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (judgment as a matter of law may be granted where evidence on the other side is "merely colorable" or "is not significantly probative"). Nor can the award be saved by Provident's argument that the other two estimates of net worth, which were both between $2 million and $3 million, underestimated O'Connor's assets, such as his collection of antique cars. Provident did not provide evidence that suggested that the other estimates of net worth were understated by over $20 million, as would have been the case were Tiffany O'Connor's testimony accurate, or even that they fell $4.5 million short, which would have been required to place the punitive damages award within the 10 percent range.

Because a reasonable jury could not have relied on Tiffany O'Connor's testimony, the $800,000 punitive damages award is excessive in relation to O'Connor's wealth. And because California law provides that a punitive damages award can be excessive

"*for that reason alone,*" even if the award is "entirely reasonable in light of the other two factors," *Adams,* 284 Cal.Rptr. 318, 813 P.2d at 1351 (emphasis in the original), we do not decide whether the award was reasonable in light of the reprehensibility of O'Connor's misconduct or its ratio to the compensatory damages award. Rather, we conclude that the award was excessive as a matter of law and remand to the district court with instructions to enter an appropriate remittitur only as to the amount of punitive damages, or in the alternative for a new trial on the amount of punitive damages. *Michelson,* 36 Cal. Rptr.2d at 359.

## III. O'CONNOR'S COUNTERCLAIMS

We review a grant of summary judgment de novo. *Botosan v. Paul McNally Realty,* 216 F.3d 827, 830 (9th Cir.2000).

 The district court did not err in granting summary judgment to Provident on O'Connor's bad faith claim. Under California law, an insurer does not violate the covenant of good faith and fair dealing unless it withholds benefits "unreasonably." *Tomaselli v. Transamerica Ins. Co.,* 25 Cal.App.4th 1269, 31 Cal.Rptr.2d 433, 440 (Ct.App.1994). Provident's denial of O'Connor's claim was not unreasonable because there existed genuine issues of fact as to O'Connor's disability. *Franceschi v. Am. Motorists Ins. Co.,* 852 F.2d 1217, 1220 (9th Cir.1988).

We also reject any arguments regarding O'Connor's other counterclaims and his prayer for punitive damages because he waived these arguments by failing to raise them adequately in his opening brief. *See Greenwood v. FAA,* 28 F.3d 971, 977 (9th Cir.1994). Furthermore, the district court did not err in granting sum-

mary judgment because O'Connor failed to present evidence which would indicate a genuine dispute of material fact.

## IV. CONCLUSION

For the reasons set forth above, we AFFIRM the jury verdict and the rulings of the district court on all issues except the question whether punitive damages are excessive. With regard to that issue, we REVERSE and REMAND to the district court with instructions to enter an appropriate remittitur or alternatively to order a new trial on the amount of punitive damages. Each party shall bear its own costs on Appeal.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.