Filed 4/2/13  Nazir v. County of Los Angeles CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

|  |  |
|---|---|
| REHAN NAZIR,<br><br>　　　　　　　Plaintiff and Appellant,<br><br>　　v.<br><br>COUNTY OF LOS ANGELES et al.,<br><br>　　Defendants and Respondents. | B238477<br><br>(Los Angeles County<br>　Super. Ct. No. BC458675) |

APPEAL from the judgment of the Superior Court of Los Angeles County.  Teresa Sanchez-Gordon, Judge.  Affirmed.

Lackie Dammeier & McGill and Michael A. Morguess for Plaintiff and Appellant.

Lawrence Beach Allen & Choi, Paul B. Beach, Nathan A. Oyster and Matthew P. Allen for Defendants and Respondents.

\* \* \* \* \* \* \* \* \* \*

Plaintiff and appellant Rehan Nazir appeals from the trial court's order sustaining the demurrer without leave to amend of defendants and respondents County of Los Angeles, Los Angeles County District Attorney's Office, and Lawrence E. Mason to the original complaint. We conclude the demurrer was properly sustained without leave to amend and a judgment of dismissal properly entered in defendants' favor. We therefore affirm.

**FACTS**

We summarize below the material facts set forth in the complaint.

In 2007, plaintiff was employed by the City of Torrance Police Department. Plaintiff had completed his period of probation and was assigned as a patrol officer. On April 14, 2007, he was working on patrol with another Torrance Police Department officer. Plaintiff and his partner learned that a robbery had occurred at a local convenience store. They were given a description of the robbery suspect. During that same shift, plaintiff and his partner talked with a confidential informant to arrange a narcotics purchase from a suspected drug dealer.

While on patrol later in the shift, plaintiff and his partner saw a man who generally matched the description of the robbery suspect they had been given earlier. The man was "act[ing] suspiciously" in the general vicinity of the convenience store where the robbery had occurred. The man also matched the description of the suspected drug dealer with whom their confidential informant was going to arrange a narcotics purchase. Plaintiff and his partner decided to make contact with the man to see if he was either the robbery suspect or the suspected drug dealer.

Plaintiff and his partner "initiat[ed] a consensual encounter" with the man and determined he was the suspected drug dealer. Plaintiff and his partner placed him under arrest. They reported the arrest to their sergeant, who arrived on the scene to assist with the arrest. Plaintiff and his partner explained the circumstances of the detention and arrest to their sergeant, including the involvement of the confidential informant.

Pursuant to training plaintiff received from the Torrance Police Department, plaintiff prepared a probable cause declaration omitting the information regarding the

2

confidential informant because there was an independent basis supporting probable cause to detain the individual.  Plaintiff also prepared the accompanying arrest report.  Plaintiff's probable cause declaration and the arrest report "were reviewed with approval" by plaintiff's partner, and the "Watch Commander" on duty for that shift.

Shortly thereafter, the arrest information was presented to defendant and respondent Los Angeles County District Attorney's Office.  The district attorney's office filed criminal charges against the arrestee.  "[C]ontemporaneous with the filing" of the criminal charges, the district attorney's office was advised of the involvement of the confidential informant in the circumstances surrounding the arrest.  The district attorney's office proceeded with the prosecution notwithstanding receipt of that information.

Sometime in October 2008, the arrestee's defense counsel learned that plaintiff and his partner had used a confidential informant on the night of the arrest and moved to have the criminal charges against his client dismissed.  The district attorney's office dismissed the charges.  (The record is not clear, but apparently there were federal charges pending against the arrestee as well.)

Following the dismissal of the charges, the Torrance Police Department initiated an investigation into the circumstances surrounding the arrest.

Defendant and respondent County of Los Angeles promulgated Special Directive 02-08, pursuant to which the district attorney's office created an internal repository of information to facilitate compliance with prosecutorial discovery obligations under *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*).  The repository is referred to as the "Brady Alert System" and is maintained by the Bureau of Prosecution Support Operations, Brady Compliance Unit, of the district attorney's office.  The repository identifies peace officers and government-employed expert witnesses for which "*Brady* material"[1] exists.  The

---

[1]     Information known to the prosecution that is exculpatory or otherwise favorable to the defense, including impeachment evidence, and is material to either guilt or punishment is commonly known as *Brady* material, the suppression of which violates due process and is deemed a "*Brady* violation."  (See *Brady*, *supra*, 373 U.S. at p. 87; *Strickler v. Greene* (1999) 527 U.S. 263, 281-282.)

3

Brady Alert System is accessible to all deputy district attorneys to assist in compliance with discovery obligations during criminal proceedings and to otherwise use in the discharge of their duties.

The Brady Compliance Unit of the district attorney's office conducted an investigation into the circumstances surrounding plaintiff's arrest of the arrestee. In February 2009, the Brady Compliance Unit notified plaintiff that it had determined his probable cause declaration and arrest report contained false information within the meaning of *Brady*, because both documents omitted any reference to the use of a confidential informant. The Brady Compliance Unit further notified plaintiff that his name was tentatively being placed in the district attorney's office "Brady Alert System" as a result of that finding. Plaintiff was advised he was permitted to file written objections or other written materials explaining his conduct, and that such information would be considered by defendant and respondent Lawrence E. Mason, senior special assistant in the district attorney's office, before a final decision was made.

Plaintiff submitted written objections and declarations (including declarations from other Torrance Police Department officers) explaining his conduct on the night of the arrest, and otherwise stating the reasons why his conduct did not warrant placement in the Brady Alert System. Plaintiff was advised that Mason would be making the final decision and that plaintiff's employer would be notified in the event the final decision was to include plaintiff's name in the Brady Alert System. Plaintiff was not allowed to appear personally or otherwise make a formal presentation to the district attorney's office before a decision was rendered.

On June 3, 2010, the district attorney's office rendered its decision that plaintiff's name would be included in the Brady Alert System, and specifically found that plaintiff was the focus of the Torrance Police Department's internal investigation surrounding the arrest, that plaintiff falsified his probable cause declaration and arrest report by omitting the confidential informant information, and that plaintiff's conduct involved moral turpitude. A week later, Mason formally notified plaintiff's employer, the Torrance

4

Police Department, of the decision to formally place plaintiff's name in the Brady Alert System.

Shortly thereafter, the Torrance Police Department notified plaintiff of its intent to discharge him for making false statements in his probable cause declaration and his arrest report concerning the arrestee, and due to his placement in the Brady Alert System. On September 9, 2010, the Torrance Police Department discharged plaintiff from his position as a police officer for the reasons set forth in its notice of intent.

## PROCEDURAL BACKGROUND

Plaintiff filed this action against the County of Los Angeles, the district attorney's office and Mason, alleging three causes of action.[2] Plaintiff's first cause of action, stated against the entity defendants only, sought relief under the Public Safety Officers Procedural Bill of Rights Act or POBRA (Gov. Code, § 3300 et seq.). Plaintiff sought equitable relief, compelling defendants to provide him a process to administratively appeal their decision to place him in the Brady Alert System. Plaintiff also requested imposition of the statutory civil penalty for violations of POBRA, as well as actual damages according to proof.

Plaintiff's second and third causes of action, stated against all three defendants, sought an administrative writ and a traditional writ, respectively, compelling defendants to remove his name from the Brady Alert System or, alternatively, compelling defendants to afford plaintiff an administrative appeal of the decision that comports with POBRA.

Defendants demurred, arguing multiple bases why plaintiff's claims fail as a matter of law, including that POBRA claims may only be brought against an employing agency and defendants were never plaintiff's employer, plaintiff failed to allege compliance with the Government Claims Act, and the decision to place plaintiff in the

---

**2**    The Torrance Police Department is not a party to this action. Plaintiff stated in his opening brief that he is pursuing a separate administrative appeal against his employer regarding his discharge.

5

Brady Alert System was a discretionary prosecutorial function which may not be reviewed by the judicial branch.

Following oral argument, the court issued its decision sustaining defendants' demurrer to plaintiff's original complaint without leave to amend. The court entered a judgment of dismissal in defendants' favor. This timely appeal followed.

## DISCUSSION

Our review of the trial court's determination of the legal sufficiency of plaintiff's complaint is de novo. We exercise "'our independent judgment about whether the complaint states a cause of action as a matter of law. [Citations.] We give the complaint a reasonable interpretation, reading it as a whole and viewing its parts in context. [Citations.] We deem to be true all material facts properly pled. [Citation.] We must also accept as true those facts that may be implied or inferred from those expressly alleged. [Citation.]'" (*Westamerica Bank v. City of Berkeley* (2011) 201 Cal.App.4th 598, 606-607 (*Westamerica Bank*); accord, *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865 (*City of Dinuba*).)

When, as here, a demurrer "is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse." (*City of Dinuba*, *supra*, 41 Cal.4th at p. 865.) "'The plaintiff bears the burden of demonstrating a reasonable possibility to cure any defect by amendment. [Citations.]'" (*Westamerica Bank*, *supra*, 201 Cal.App.4th at p. 607; see also *Gananian v. Wagstaffe* (2011) 199 Cal.App.4th 1532, 1539 (*Gananian*) ["'unless failure to grant leave to amend was an abuse of discretion, the appellate court must affirm the judgment if it is correct on any theory'"].)

## 1. The First Cause of Action Pursuant to POBRA.

In his first cause of action, plaintiff seeks equitable relief pursuant to Government Code section 3309.5[3], compelling the district attorney's office to afford him an

---

[3] All further undesignated section references are to the Government Code unless otherwise indicated.

administrative appeal of its decision to place him in its Brady Alert System. Plaintiff alleges entitlement to an administrative appeal of the decision that comports with the minimum requirements of POBRA, as well as statutory penalties and damages. Plaintiff concedes that defendants have never been his employer, but asserts that the POBRA claim nonetheless lies against those public agencies because the decision to place him in the Brady Alert System amounted to "punitive action" within the meaning of POBRA. We are not persuaded.

Our Supreme Court has explained that POBRA "sets forth a list of basic rights and protections which must be afforded all peace officers (see § 3301) *by the public entities which employ them.*" (*Baggett v. Gates* (1982) 32 Cal.3d 128, 135, italics added; accord, *White v. County of Sacramento* (1982) 31 Cal.3d 676, 679 (*White*); *Moore v. City of Los Angeles* (2007) 156 Cal.App.4th 373, 380-381.) Indeed, POBRA contains an express declaration of legislative intent evincing the labor-relations context of the statutory scheme: "The Legislature hereby finds and declares that the rights and protections provided to peace officers under this chapter constitute a matter of statewide concern. *The Legislature further finds and declares that effective law enforcement depends upon the maintenance of stable employer-employee relations, between public safety employees and their employers.* In order to assure that stable relations are continued throughout the state and to further assure that effective services are provided to all people of the state, it is necessary that this chapter be applicable to all public safety officers, as defined in this section, wherever situated within the State of California." (§ 3301, italics added.)[4]

Statutory language should be given a plain and common sense meaning, and statutory provisions are to be " 'read in context, considering the nature and purpose of the

---

[4]    POBRA defines "public safety officer" to include all peace officers specified in the following sections of the Penal Code:  830.1; 830.2; 830.3; 830.31; 830.32; 830.33, except subdivision (e); 830.34, 830.35, except subdivision (c); 830.36; 830.37; 830.38; 830.4; and 830.5.  (§ 3301.)  There is no dispute plaintiff was a public safety officer within the meaning of POBRA, and, for purposes of this opinion, we use the terms peace officer or public safety officer interchangeably.

7

statutory enactment.' [Citation.]" (*Torres v. Automobile Club of So. California* (1997) 15 Cal.4th 771, 777.) Reading the statutory provisions of POBRA as a whole, and in context with one another, the legislative focus on the employment relationship between peace officers and the public agencies that employ them is patently clear.

For instance, section 3303 catalogues the minimum rights and protections to be afforded a peace officer "under investigation and subjected to interrogation *by his or her commanding officer, or any other member of the employing public safety department*." (§ 3303, italics added.) "[POBRA] was not designed to provide public safety officers any greater right than other persons in connection with investigations by law enforcement agencies in which they are not employed. By its own terms, the protections of section 3303 apply only to investigations 'by [the public safety officer's] commanding officer, or any other member of the employing public safety department, that could lead to punitive action . . . .' As used in the statute, 'punitive action means any action that may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment.' (*Ibid*.) This language was held . . . [citation] to render section 3303 inapplicable to interrogations of public safety officers by representatives of a law enforcement agency that does not employ the interrogated officer." (*California Correctional Peace Officers Assn. v. State of California* (2000) 82 Cal.App.4th 294, 306 (*Correctional Peace Officers Assn.*).)

Similarly, sections 3305 and 3306 pertain to the placement of "adverse comments" in a peace officer's personnel file, and the officer's corresponding rights to notice and an opportunity to provide a responsive statement. Section 3308 provides that no public safety officer shall be required "for purposes of job assignment or other personnel action" to disclose specified financial information. And, section 3309 prevents the search of a public safety officer's locker at his or her place of employment, except in his or her presence, with his or her consent, or pursuant to a valid search warrant. All of these provisions plainly relate to rights and protections afforded a peace officer vis-à-vis his or her employing agency.

8

Section 3309.5 also uses language highlighting the employment context of the statutory scheme. In pertinent part, it reads: "(a) It shall be unlawful for *any public safety department* to deny or refuse to any public safety officer the rights and protections guaranteed to him or her by this chapter. [¶] . . . [¶] (c) The superior court shall have initial jurisdiction over any proceeding brought by any public safety officer *against any public safety department* for alleged violations of this chapter. [¶] (d)(1) In any case where the superior court finds that *a public safety department* has violated any of the provisions of this chapter, the court shall render appropriate injunctive or other extraordinary relief to remedy the violation and to prevent future violations of a like or similar nature, including, but not limited to, the granting of a temporary restraining order, preliminary injunction, or permanent injunction *prohibiting the public safety department from taking any punitive action against the public safety officer.*" (§ 3309.5, italics added.)

In *Correctional Peace Officers Assn.*, the court reversed, in part, a trial court order enjoining an alleged joint investigation of state correctional officers by their employer, the California Department of Corrections (CDC), and the Department of Justice (DOJ). (*Correctional Peace Officers Assn.*, *supra*, 82 Cal.App.4th at pp. 311-312.) The court explained the equitable relief granted to the officers in their POBRA claim against their employer for violations of section 3303 was valid and legislatively authorized, but reversed the inclusion of the DOJ in the scope of the injunction because there was no statutory basis for such relief against a nonemploying agency. "Section 3309.5 authorizes injunctive relief only as to the employing public safety department, which is the CDC. Nowhere does the statute authorize enjoining the investigative activities of outside law enforcement agencies such as the DOJ." (*Correctional Peace Officers Assn.*, at p. 312.)

Nonetheless, plaintiff argues that at least one provision of POBRA, section 3304, subdivision (b), should be read as embracing the right to enforce POBRA claims against any public agency. Section 3304, subdivision (b) provides: "No punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by any public

9

agency against any public safety officer who has successfully completed the probationary period that may be required by his or her employing agency without providing the public safety officer with an opportunity for administrative appeal." Plaintiff contends the use of the phrase "any public agency" compels the conclusion that a POBRA claim is viable against *any* public agency, even a nonemploying agency. We do not agree.

Section 3304 "provides a number of procedural rights for public safety officers who may be accused of misconduct in the course of their employment." (*Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 320.) Subdivision (a) of section 3304 provides that no peace officer shall be subjected "to punitive action, or denied promotion, or be threatened with any such treatment, because of the lawful exercise of the rights granted under this chapter, or the exercise of any rights under any existing administrative grievance procedure." Being subjected to punitive action, being denied a promotion, or being threatened with such action for exercising rights under a grievance procedure all indicate a focus on the types of adverse acts an employer may take against an employee. Subdivision (a) also specifically provides that nothing in the section precludes the head of the agency from ordering the public safety officer to cooperate with the criminal investigations of *other* agencies. (§ 3304, subd. (a).)

Additional procedural requirements, such as a statute of limitations on misconduct investigations, are also enumerated in section 3304. Subdivision (f) of section 3304 then provides that if the public agency "decides to impose discipline," the peace officer shall be notified in writing of the decision. (§ 3304, subd. (f).) Only an employing agency would be in a position to "impose discipline" on a peace officer within the meaning of POBRA.

We will not read subdivision (b) of section 3304 in isolation from the balance of the statutory scheme. The provision plainly provides that peace officers must be afforded an administrative appeal when punitive actions are taken against them, and the Supreme Court has stated the concept of punitive action should be construed broadly to ensure against the taking of erroneous action against peace officers. (*White*, *supra*, 31 Cal.3d at pp. 682-683.) However, in so explaining, the Supreme Court analogized to the related

10

statutory scheme set forth in the State Civil Service Act (§ 18500 et seq.) and its provisions giving certain protections to public employees from adverse or punitive actions *by their public employers*. (See *White*, at pp. 682-683, citing *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 210.) Section 3304, subdivision (b) cannot reasonably be read to authorize a POBRA claim against a nonemploying public agency wholly unrelated to the peace officer's employing agency.

Not surprisingly, plaintiff does not cite any authority that supports his position. Neither *Hopson v. City of Los Angeles* (1983) 139 Cal.App.3d 347 (*Hopson*) nor *Caloca v. County of San Diego* (1999) 72 Cal.App.4th 1209 (*Caloca*) stands for the proposition that nonemploying agencies may be sued, despite plaintiff's assertion to the contrary. Indeed, both *Hopson* and *Caloca* involved entities that were directly related to the peace officers' employing agency.

In *Hopson*, the Board of Police Commissioners for the Los Angeles Police Department issued a report concerning an officer-involved shooting. The board's report found that the conduct of the officers involved had violated department policy and resulted from severe lapses in judgment. The board ordered the report to be placed in the officers' personnel files. (*Hopson*, *supra*, 139 Cal.App.3d at p. 350.) The officers were otherwise not disciplined following a decision by the police chief that no discipline would be imposed. The issue on appeal was whether placing the report in the officers' respective personnel files constituted "punitive action" within the meaning of POBRA because of the potential adverse impact on the officers' career advancement within the department. *Hopson* held that it did, and that the officers were therefore entitled to an administrative appeal pursuant to section 3304, subdivision (b) concerning placement of the report in their personnel files. (*Hopson*, at p. 354.)

*Hopson* explained that the board, pursuant to a city charter provision, was the head of the Los Angeles Police Department, the officers' employer. (*Hopson*, *supra*, 139 Cal.App.3d at pp. 352-353 & fn. 3.) The officers were therefore not seeking relief against a wholly separate agency, but were in fact seeking relief against their employer

11

and the City of Los Angeles, the public entity of which the police department was an agency.

*Caloca* is similar. There, various sheriff's deputies employed by the San Diego County Sheriff's Department filed an action against the county and its civil service commission seeking an administrative appeal pursuant to POBRA. (*Caloca*, *supra*, 72 Cal.App.4th at p. 1212.) The deputies sought to challenge a citizens review board report that the deputies had engaged in misconduct. The citizens review board was a public board established by the San Diego County Board of Supervisors, following a voter-approved ballot measure, authorizing creation of the county review board. The citizens review board was established, in part, to review citizen complaints made against peace officers, and to advise the board of supervisors and the county sheriff about the results of their investigations of such complaints. (*Id.* at pp. 1212-1213.) The citizens review board was therefore an agency of the county which employed the deputies, and the deputies' action sought relief against the public entity that employed them. (*Id.* at pp. 1220-1223.)

There are no facts here similar to either *Hopson* or *Caloca*. The district attorney's office and the County of Los Angeles are public entities, wholly independent and unrelated to plaintiff's employing agency, the City of Torrance Police Department. Plaintiff's first cause of action under POBRA, stated against two nonemploying agencies, is therefore defective as a matter of law, and no amendment can cure that material defect. The demurrer to the first cause of action was properly sustained without leave to amend.

**2.     The Second and Third Causes of Action Seeking Writ Relief.**

In his second cause of action, plaintiff requests a writ of administrative mandamus, pursuant to Code of Civil Procedure section 1094.5, compelling defendants to set aside their decision to place him in the Brady Alert System, or alternatively, compelling them to provide him with an administrative appeal to challenge that decision. In his third cause of action, plaintiff requests the same relief pursuant to a traditional writ under Code of Civil Procedure section 1085. Neither remedy is available to plaintiff.

12

Plaintiff seeks a court order interfering with the conduct of the district attorney's office in creating and maintaining an internal database of suspected *Brady* material for use by its deputy district attorneys in assessing witnesses, determining the viability of criminal charges, and in complying with their discovery obligations during the course of criminal proceedings. Such conduct by the district attorney's office is intimately connected to its executive branch prosecutorial functions. The constitutional doctrine of separation of powers precludes judicial interference with such functions. (See *People v. Birks* (1998) 19 Cal.4th 108, 134 (*Birks*); *People v. Eubanks* (1996) 14 Cal.4th 580, 589 (*Eubanks*).)

"The district attorney of each county is the public prosecutor, vested with the power to conduct on behalf of the People all prosecutions for public offenses within the county. [Citations.] Subject to supervision by the Attorney General [citations], therefore, the district attorney of each county independently exercises all the executive branch's discretionary powers in the initiation and conduct of criminal proceedings. [Citations.] The district attorney's discretionary functions extend from the investigation and gathering of evidence relating to criminal offenses [citation], through the crucial decisions of whom to charge and what charges to bring, to the numerous choices the prosecutor makes at trial regarding 'whether to seek, oppose, accept, or challenge judicial actions and rulings.' [Citations.]" (*Eubanks*, *supra*, 14 Cal.4th at p. 589.)

"'"[P]rosecutorial discretion is *basic to the framework of the California criminal justice system*. [Citations.] This discretion, though recognized by statute in California, is founded upon constitutional principles of separation of powers and due process of law."' [Citation.] 'The district attorney's function is quasi-judicial in nature [citation], and . . . he is vested with discretionary power in determining whether to prosecute in any particular case. *An unbroken line of cases in California* has recognized this discretion and its insulation from control by the courts . . . .' [Citation.]" (*Gananian*, *supra*, 199 Cal.App.4th at p. 1543; accord, *Birks*, *supra*, 19 Cal.4th at p. 134 [prosecution's authority is founded "on the principle of separation of powers, and generally is not subject to supervision by the judicial branch"].)

When the district attorney's office made the discretionary decision to include plaintiff in its Brady Alert System, it was not directly engaged in the classic prosecutorial function of making a charging decision. However, that conduct, undertaken as part of the district attorney's office's policy of maintaining an internal database of *Brady* material to facilitate the discharge of its constitutional obligations under *Brady*, is so inextricably intertwined with the district attorney's core prosecutorial functions that it cannot be divorced from them. Plaintiff has not cited any legal authority that would allow a mandamus action to lie to interfere with such discretionary authority, nor has our research disclosed any.

Traditional mandamus is not available in any case to compel the performance of a discretionary act, such as the decision whether to include a peace officer in the district attorney's Brady Alert System. "Generally, Code of Civil Procedure section 1085 may only be employed to compel the performance of a duty which is purely ministerial in character. [Citation.] [¶] A ministerial act is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists. Discretion, on the other hand, is the power conferred on public functionaries to act officially according to the dictates of their own judgment. [Citation.]" (*Rodriguez v. Solis* (1991) 1 Cal.App.4th 495, 501-502.) "Mandamus does not lie to compel a public agency to exercise discretionary powers in a particular manner, only to compel it to exercise its discretion in some manner." (*AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health* (2011) 197 Cal.App.4th 693, 700-701.)

Administrative mandamus pursuant to Code of Civil Procedure section 1094.5 also is not available because plaintiff cannot state any facts showing that the district attorney's office was mandated by law to provide a hearing or take evidence before making a final decision whether to include a peace officer's name in the Brady Alert System. (See *Monterey Mechanical Co. v. Sacramento Regional County Sanitation Dist.*

14

(1996) 44 Cal.App.4th 1391, 1399.) The demurrer to the second and third causes of action was properly sustained without leave to amend.

## DISPOSITION

The judgment of dismissal is affirmed. Respondents shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

GRIMES, J.

WE CONCUR:

BIGELOW, P. J.

FLIER, J.